## WILLIAM M. HALSTED *versus* JOSIAH LITTLE & al.

In a bill in equity wherein the plaintiff sought for the specific performance of a contract for the conveyance of real estate, made between the defendant and one whose interest in the contract the plaintiff had purchased at a sale on execution under the act of amendment to Rev. Stat. c. 94, § 50, which contract provided for the conveyance of one fourth part of a cotton factory upon the payment of certain sums at certain times, and which also contained stipulations for the advancement of money by the execution debtor for the purchase of cotton to be there manufactured, the sale of the manufactured goods, the compensation for these services, and for the services of other owners who were to be employed in conducting the business, these acts, or some of them, to be performed after the payments for the fourth part of the factory should have been made : —

It was held, that the conveyance was to be made whenever the money was paid for the fourth of the factory, although the other stipulations in the agreement might not have been performed on his part : —

That although the defendant might waive any forfeiture by reason of a failure by the other party to make one payment according to the agreement, by an offer afterwards to convey upon the payment of the amount then unpaid, yet that this would be no waiver of the right to insist upon a forfeiture upon failure to make the next payment according to the agreement : —

And that the plaintiff could not avail himself of any balance which might be due to the execution debtor on settlement of the concerns of the parties under the other stipulations in the agreement, in part payment of the sums agreed to be paid for the fourth of the factory, by virtue of his purchase at the execution sale, no appropriation having been made of such balance for that purpose.

BILL IN EQUITY. The defendants, Josiah Little and Ephraim Wood of Winthrop, and Josiah Little of Newbury, were copartners doing business at Winthrop. The parties made the following agreement in reference to the case.

It is agreed between the parties in this case, that it shall be left to the Court to decide, whether Asa Bigelow, Jr. had any attachable interest in the property in controversy at the time it was seized by the plaintiff, as set forth in the bill, which could be made available to the plaintiff under the circumstances of this case. If the Court should decide, that the said Bigelow, at that time, had no attachable interest therein, which could be made available to the plaintiff under the law of this State, as administered either at law or in equity, or that the same has not been acquired by him, the bill is to be dismissed.

But if the Court should decide these points in favor of the plaintiff, it is to be left to the Court to determine, whether the plaintiff, thus succeeding to the interest of Bigelow, is bound to make compensation to the defendants, or either of them, for the damages occasioned to him or them, by the failure or inability of Bigelow to fulfil the stipulations on his part to be performed by the contract of the 15th of February, 1841. If the Court should decide, that the plaintiff was not so bound, or if the Court should be of opinion, that he is bound to make such compensation, it is agreed, that it shall be left to a master to liquidate, upon such principles, as the Court shall prescribe, what sum the plaintiff ought to pay, if any, to entitle himself to the relief sought by the bill.

And it is further agreed, that either party may go into further proof before the master touching the matters to be submitted to him.

The parties reserve to themselves the right, if they shall so agree, under the sanction of the Court to substitute referees to be selected by the parties, in the place of a master.

Upon the report of the master or of referees, if substituted, and upon the bill, answer and proof, it is agreed, that the Court shall make such final decree, as the law and equity of the case, may, in their judgment, require.

It appeared by the bill and answers, that on the 15th of February, A. D. 1841, the said Josiah Little entered into an agreement with one Asa Bigelow, Jr. of the city of New York,

merchant, in the words and figures, or to the purport and effect following, viz :—

"This memorandum of agreement entered into this 15th day of February, A. D. 1841, by and between Asa Bigelow, Jr. of the city of New York, of one part, and Josiah Little of Minot, in the State of Maine, of the other part; witnesseth, that the said Little agrees to sell to the said Bigelow, one quarter part of the Winthrop Factory, with all the personal property of said factory, which the said Little purchased of Benjamin Sewall, as will appear by their agreement, dated the 19th day of December, A. D. 1840, and their further agreement, dated the 1st day of January, A. D. 1841. The said Little on his part, agrees to make the conveyance of said quarter part to said Bigelow, upon his, said Little's, receiving the conveyance from said Sewall; and the said Bigelow is to make the payments for his proportion of the said property in the same manner as stipulated by said Little in said agreement above referred to, and enter into possession of the premises and receive his proportion of profits and rents of said property, and pay his proportion of the expenses attending the operation. It is understood by the parties to this agreement, that the said Little is to retain one quarter and dispose of the remaining half to Josiah Little of Newbury, Commonwealth of Massachusetts, and Ephraim Wood of Lewiston, State of Maine, of the above mentioned property, and the said Little of Newbury and said Wood are to have their proportion of the rents and profits, and be subject to the expenses of operation as aforementioned. It is also further agreed by the parties to this instrument, that the said Bigelow is to make all the purchases of cotton for the operation of said factory, and make sale of all the goods, manufactured except what may be sold by said other parties in the State where the factory is located. The said Bigelow is to make all advances for stock and charge legal interest for all such advances ; is to receive $2\frac{1}{2}$ per cent. for all such purchases and sales; the said Little and Wood are to keep an oversight of the operations of the different departments of the factory business at home, and take care of all the estate be-

longing to the company, and make sales of all the goods, which can be disposed of to advantage in the vicinity of the factory, and receive for their compensation the sum of two dollars and fifty cents per day each, and if for the term of one year from the first day of March next, the charges of the said Bigelow for commissions shall amount to more than the amount to be paid to the said Little and Wood, then there shall be an equal division of such overplus, whatever it may be, between said Little and Wood and said Bigelow.

" It is understood by the parties, that the said Bigelow is to be reimbursed for all advances for the factory, by having a sufficient quantity of goods in his hands for this purpose, after the mill shall have gone into operation, and if there should not be sale enough of manufactured goods at the factory to pay the current expenses of the same, the said operators are to draw upon said Bigelow at not less than ninety days, (unless by special agreement, at a shorter time,) and said Bigelow is to be reimbursed by manufactured goods.

" Asa Bigelow, Jr.<br>" Josiah Little."

The facts in the case are sufficiently stated in the opinion of the Court.

The very able arguments in writing, furnished to the Court by

*Emmons* and *May*, for the plaintiff — and by

*N. Weston*, for the defendants, embracing arguments upon the facts as well as on the law, are too extended for the space allowed for one case; and are therefore omitted.

The opinion of the Court was drawn up by

SHEPLEY J. — By this bill the plaintiff seeks the specific performance of a contract for the conveyance of real estate, made on February 15, 1841, between one of the defendants, Josiah Little of Winthrop, and Asa Bigelow, Jr. That contract provided for a conveyance of one fourth part of the Winthrop factory upon certain terms; and contained stipulations respecting the conveyance of parts of it to the two other

defendants, the advancement of money by Bigelow for the purchase of cotton to be manufactured, the sale of the manufactured goods, the compensation to be made for these services, and also to those owners, who were to be employed in conducting the business.

The plaintiff's title is derived from a seizure and sale of the right of Bigelow to a conveyance of a fourth part of the factory under that contract, by virtue of an execution issued on a judgment recovered by the members of the firm of Halstead, Hains & Co. against Bigelow. The seizure on the execution was made on May 6, 1843, and the sale on June 24, following. The plaintiff became the purchaser, and received a deed from the officer conveying to him the right, which Bigelow had on May 6, 1843, to a conveyance of one fourth part of the factory.

The seizure and sale upon the execution were authorized by statute, c. 94, $ 50, as amended; and in c. 117, $ 50, it is provided, that the purchaser should have the same remedy to compel a conveyance, as mortgagors have to compel mortgagees to convey to them, on performance or offer to perform the condition of a mortgage.

The first inquiry presented is, what right had Bigelow to a conveyance of one fourth part of the factory on May 6, 1843. Little had made a contract on December 19, 1840, with Benjamin Sewall, for the purchase of the Winthrop Factory; and the terms, upon which it was to be conveyed, had in some respects been varied by a subsequent agreement, made on January 1, 1841. The contract between Bigelow and Little, made on February 15, 1841, referred to it, and contained the following clause. "The said Little on his part agrees to make the conveyance of said quarter part to said Bigelow, upon said Little's receiving the conveyance from said Sewall; and the said Bigelow is to make the payments for his proportion of said property in the same manner as stipulated by said Little in said agreement above referred to, and enter into possession of the premises and receive his proportion of the profits and rents of said property, and pay his proportion of

the expenses attending the operation." The contract between Sewall and Little provided for the payment of $22,000, for the factory, one fourth on March 1, 1841, and the remaining three fourths in one, two, and three years from its date, with interest annually, with satisfactory security, or notes and a mortgage of the estate. The answers admit, that Bigelow paid his proportion of the first installment, except a trifling sum, which does not appear to have been regarded as any objection to his right to have a conveyance of his fourth part. And that the conveyances were made to the other three defendants by the request of Bigelow, because he was not present to execute the mortgage to secure the payment of the other installment. And that the defendants were to hold his fourth of the estate, until they should convey it to him. It could not have been the expectation or intention of the parties, that they should convey it to him, unless he should continue to perform the contract respecting it, as made with Little. It is insisted, that Little would not be obliged to make a conveyance to him, unless he had performed all the stipulations on his part contained in that contract. That a failure on his part to advance money for the purchase of cotton, or to fulfil any other engagement respecting the management of the business, would preclude him from insisting upon a conveyance of a fourth part of the factory, if he had fully and punctually paid for it. It is doubtless true, that Little was induced to agree to sell a fourth part of the factory to him, and the other defendants to embark in the manufacture of cotton goods, in the expectation, that Bigelow would be interested with them, and would advance money to enable them to conduct the business in a profitable manner, to be reimbursed by a sale of the goods. The contract did not, however, make his right to become a part owner of the factory to depend upon his performance of all these expected duties. On the contrary, it provided, that he might become an owner of one fourth upon the precise terms, upon which Little was to become the owner by purchase from Sewall. The stipulations on his part respecting the advancement of money, the sale of the goods, and the

management of the business, were to be performed chiefly, after it was contemplated, that he would be the owner of one fourth of the factory. The answers substantially admit, that he might have become the owner of it as soon as Sewall had made his conveyance, by giving satisfactory security for his proportion of the other installments. The provision authorizing him to enter into possession and receive his proportion of the rents and profits, and subjecting him to the payment of his proportion of the expenses, contained in that clause of the contract, which provides for the payment of one fourth of the estate, is explained by the other provisions. It was not designed to impose it as a burden upon him, that he should do so to be entitled to a conveyance. It appears to have been inserted to give him rights, which he would not have acquired by a conveyance of a fourth part of the estate only; and to have been necessary for that purpose. By his contract with Sewall, Little had become entitled to enter into possession of the factory on the first day of January preceding, and to continue it until the fifteenth day of May following; and such a provision was necessary to secure to Bigelow his share of that interest, and to admit him to be a partner in the business from that time. If the contract would admit of a different construction, it does not appear, that Bigelow did not fully perform all the stipulations contained in it to be performed by him, until after the first installment had been paid, by which he would have become entitled to a conveyance of a fourth part as soon as Sewall had conveyed to Little, by making the security required by the contract for his proportion of the other installments. But his proportion of those installments, which became payable on December 19, 1841 and 1842, he had wholly neglected to pay until May 6, 1843, when his right to a conveyance was seized upon the execution. And he, as early as January 18, 1842, had refused to proceed further in the execution of the contract, alleging that he was unable to do so, when a conveyance of a fourth part was offered and by him declined.

For the plaintiff it is contended, that the defendants have

waived their right to insist upon a forfeiture for these reasons, by admitting that they were ready and willing to convey, after Bigelow had failed to perform, upon his then proceeding to perform. It does appear, that Little, during the session of the District Court in this county, in the month of April, 1842, made a disclosure, as trustee in the suit in favor of *Halsted & al.* v. *Bigelow*, containing the following language. " The said Littles and Wood, are and have been at all times ready to make such conveyance to said Bigelow upon his giving sufficient security to pay his part of the installments subsequent to the first." This would not bind them to continue to waive their rights to insist upon a forfeiture, after another installment had become payable in December following, and an additional burden had been imposed upon them by his neglect to pay his proportion of it. This, however, is not the only difficulty to be surmounted in coming to a conclusion favorable to the plaintiff. When the last installment became payable, on December 19, 1843, he tendered the sum of $2541,51, in performance of Bigelow's contract, and this, with the sum of $2164, alleged to be due from the defendants to Bigelow on account, is said to have been sufficient to pay for one fourth of the factory. How does the plaintiff become entitled to have a sum of money due from the defendants to Bigelow on an account, arising out of their operations as partners in the manufacture of goods, applied in payment for the real estate purchased by him ? He obtained no title to it by the seizure and sale of Bigelow's right to a conveyance of real estate. He does not appear to have acquired any title to that balance due on account, by assignment or in any other manner, or any right to discharge the defendants from the payment of it to Bigelow or his assignee. Nor does Bigelow appear to have consented to such an appropriation of it. Nor have the defendants, unless it can be inferred from a memorandum made by Little and probably handed to the plaintiff about the time of his purchase of Bigelow's right. The balance due to Bigelow appears there to have been included in a computation of the amount that would be due from Bigelow to pay for one fourth of the

factory. The memorandum is without signature, and it contains no engagement to receive that balance in part payment for the real estate. It could not be expected, that they would so receive it without obtaining a discharge of it from Bigelow, or some other person authorized to discharge it.

A court of justice, without other proof, would not be authorized to make such an application of it. It is not perceived, that the plaintiff can have even an equitable claim to have it so applied, unless he would insist, as the defendants do, that all the stipulations contained in the contract had reference to the conveyance of the real estate. And in that case he must meet with the additional difficulty, that they have not all been performed. There has been no sufficient performance, or tender of performance, of the contract, to entitle Bigelow or his assignee, to call for a conveyance of one fourth part of the factory.

*The bill is dismissed with costs for the defendants.*