## Battle *vs.* The Rochester City Bank.

Where the obligation of a party is to pay a sum in land, and he is not in default, he can not be compelled to pay in money.

By a special arrangement between the plaintiff and defendants the latter were to pay the former the sum of $1823,44, by applying it on a contract for the sale of land which the defendants were to execute to the plaintiff. The land contract was entered into accordingly, and the $1823,44 endorsed thereon as the first payment. The plaintiff failed to make the subsequent payments, and for that reason the defendants rescinded the contract in pursuance of a provision therein giving them a right to do so. The plaintiff then brought an action for the $1823,44. *Held,* that he could not recover.

Where a sum is receipted upon a contract as paid in money, it may be shown by parol that the payment was not in money.

Where a contract is rescinded by the mutual consent of both parties, and without the fault of either, they are restored to the legal rights which they had immediately before the contract was made. *Per* Ruggles, J

In May, 1841, the plaintiff Battle was indebted to the City Bank of Rochester upon notes which had been discounted, in the sum of $5,400 besides interest. This sum was secured by a mortgage made by Battle to the Bank on a dwelling house in Allen-street in the city of Rochester. This mortgage was afterwards foreclosed and the bank purchased the house at a master's sale on the first of July, 1841.

On the 19th of October, 1841, the bank held a mortgage executed by the plaintiff Battle to one Ely, and assigned by him to the bank, upon a warehouse in Rochester. The mortgage had at that time been foreclosed by a decree, and the warehouse was to be sold on the 22d of the same month. Under these circumstances it was agreed in writing, on the 19th of Oct. between the parties to this suit, that if the bank should at the mortgage sale purchase the warehouse for the sum due on the Ely mortgage, they would in settlement with the plaintiff allow him $9000 for the dwelling house and warehouse, and that after deducting from that sum the amount due from the plaintiff to the bank on his notes, with interest, &c. the balance should be applied and allowed in part payment for a farm called the *Chapin* farm, containing 154 acres, *which by the same agreement the plain-*

*tiff Battle was to purchase from the bank at $30 the acre, and for which the bank was to give Battle a contract.*

The bank purchased the warehouse at the sale under the Ely mortgage, for the debt and interest due thereon, and upon an accounting between the plaintiff and the defendants soon afterwards the plaintiff was allowed $9000 for the warehouse and dwelling house, and after deducting from that sum the debt due from the plaintiff to the bank, there remained a balance of $1823,44 to be applied on the purchase of the Chapin farm.

On the 9th of November, 1841, the contract was made for the sale of the Chapin farm by the bank to Battle. This contract was made in pursuance and fulfillment of the previous agreement in writing made on the 19th of October, containing the provision that the balance which might on settlement be found due from the bank to Battle should be endorsed on the contract for the Chapin farm.

The contract of the 9th November, 1841, was as follows: The bank covenanted and agreed with Battle to sell and convey to him in fee the Chapin farm by a good and sufficient warranty deed, upon payment by Battle of the sum of $4650 and interest, in manner following, to wit; in hand the sum of $1823,44, and the balance, $2826,56, in five equal annual installments from the first of May, 1842, with interest annually from the 22d day of October preceding, and all taxes to be assessed on the premises. Battle covenanted to pay the money in manner aforesaid, and the payment was thereby declared to be a condition precedent to the execution of the deed. And in case of failure on the part of Battle to make either of the payments or in any respect to fulfill the contract, the same was to become void on such failure, if the party of the first part should elect to rescind it, and on his previously giving notice of at least thirty days of such election; and in case of such failure and the consequent rescinding of the contract, Battle was to forfeit one hundred dollars as the ascertained and liquidated damages, and retain no legal or equitable interest in the premises after the contract was rescinded. The party of the second part was authorized to take immediate possession of the land.

Battle *v.* The Rochester City Bank.

The following receipt was endorsed on the contract, viz. ' $1823,44. November 9th, 1801, received on the within contract eighteen hundred and twenty-three dollars forty-four cents, according to its terms and conditions.   W. S. Philpot, Cashier.' This sum is stated in the bill of exceptions to be the same which was found due from the bank to Battle on the accounting in pursuance of the agreement of the 19th of November. It was not money actually paid by Battle.   Battle took possession of the premises, but failed in paying the first installment and interest.   In fact he never paid any thing on the contract.

On the 12th of May, 1843, the bank gave him a written notice that the first installment and interest had become payable on the first of that month and was unpaid, and that the bank elected to declare the articles of agreement void, and that the same be and were rescinded unless that installment and interest should be paid within thirty days, and that the bank would then and there require possession of the land.   Battle did not make the payment, but surrendered the possession to the bank, who have since remained in possession.   This suit was commenced in June, 1843, for the purpose of recovering the said sum of $1823,44, endorsed on the contract.   The declaration contained a special count, a count for land bargained and sold to the defendants at their request and by the plaintiff suffered to be conveyed to them ; also the common money counts.   The defendants demurred to the special count, and the supreme court rendered judgment for them on the demurrer.   Issue was joined upon the other counts, and on the trial at the Monroe county circuit, before Dayton, circuit judge, the plaintiff proved the foregoing facts and was nonsuited.   After judgment in the supreme court, the plaintiff appealed to this court.

*S. Boughton,* for appellant, cited *Ketchum* v. *Evertson,* (13 *John.* 359 ;) *Ellis* v. *Hoskins,* (14 *John.* 363 ;) *Greenby* v. *Chevers,* (9 *id.* 126 ;) *Green* v. *Green,* (9 *Cowen,* 46 ;) *Hudson* v. *Swift,* (20 *John.* 27 ;) *Canfield* v. *Westcott,* (5 *Cowen,* 170, 171, 172 ;) *Weaver* v. *Bentley,* (1 *Caines,* 47 ;) *Ballard* v. *Walker,* (3 *John. Ch.* 60 ;) *Gillet* v. *Maynard,* (5 *John.* 85 ;)

*Fuller* v. *Hubbard*, (6 *Cowen*, 13 ;) *Raymond* v. *Barnard*, (12 *John.* 274 ;) 2 *Comyn on Contracts*, 75 ; *Healey* v. *Utley*, (1 *Cowen*, 345 ;) *Spring* v. *Coffin*, (10 *Mass.* 21 ;) *Shearer* v. *Fowler*, (7 *id.* 31 ;) *Whipple* v. *Dow*, (2 *id.* 415 ;) *Stevens* v. *Snow*, (3 *Burr.* 1237.)

*H. Humphrey*, for respondents.

RUGGLES, J. Assuming that the contract of the 9th of November was rescinded by the mutual and voluntary consent of both parties, and without the fault of either, (and this is the most favorable view for the plaintiff,) the parties must be deemed to be restored by that rescission to the condition in which they stood immediately before the contract was made. (5 *East*, 449 ; *Hunt* v. *Silk*, 15 *Mass.* 319 ; *Conner* v. *Henderson*, 6 *Gill & John.* 424.) In point of fact the rescission was occasioned by the plaintiff's breach of the contract, and was a consequence of that breach. He therefore has no claim to be placed thereby on better ground than he occupied when the contract was made. At that time the bank owed the plaintiff the sum of $1823,44, but not in so much money. It was payable in land. Speaking more exactly, the bank was bound by the agreement in writing of the 19th of October, to give the plaintiff a contract for the conveyance to him of the Chapin farm at $30 the acre, and he was bound to take that contract and apply the balance due from the bank, as above mentioned, in part payment for the farm, and to pay the residue in money. The bank, therefore, did not owe him money and he could not compel payment in money. It was an essential part of the agreement existing before and at the time when the last contract was made, that the sum now claimed by the plaintiff, in money, should be applied upon the plaintiff's purchase of the Chapin farm, and it was the defendants' undoubted right to have it so applied.

In *Wilt* v. *Ogden*, (12 *John.* 56,) the plaintiff declared on an agreement or promissory note, made by the defendant, to pay the plaintiff $270, in drawing plaster at so much per ton, from Ithaca to Owego, and also for goods sold and delivered. The note was given for a pair of horses sold by the plaintiff to the

defendant. The plaintiff proved the note at the trial, but the defendant proved that he had been ready and offered to draw the plaster. The plaintiff not being able to recover on the note, offered to abandon his count thereon, and claimed to recover the value of the horses on the other counts. But the plaintiff was nonsuited, and the court say, upon the motion to set the nonsuit aside, that to allow the plaintiffs to recover back the original consideration, would be permitting them entirely to change the contract, and to recover in money when payment was to be made in the performance of services, and this too without any default on the part of the defendant.

This is in principle like the case in hand. The rescission of the contract in question by the bank was not a breach of it, but was in pursuance of a provision contained in it, and the defendants are chargeable with no violation of it whatever.

The court is nevertheless called upon by the plaintiff to change the defendants' obligation to pay in land, into a duty to pay in cash, and that against the consent and without the default of the defendant. I know of no principle on which this can be done in any form of action, either at law or in equity.

The plaintiff, in fact, paid no money on the contract of the 9th of November. The receipt of the sum now claimed was indorsed on that contract as if money had been paid. But the receipt is open to explanation ; the plaintiff has explained it by his own proof. The sum which the parties had bound themselves to apply in part payment for the Chapin farm, was so applied by that receipt, but no money was parted with by the plaintiff. The plaintiff's difficulty, however, does not lie in the form of his pleadings, but in the want of merits in his case. The first count in the declaration is bad for the reason, that upon the facts set forth in it, there was no legal liability on the part of the defendant to pay the plaintiff the sum claimed, in any other mode than by allowing it upon the purchase of the Chapin farm, which the plaintiff has refused to carry into effect. The judgment of the court below upon the demurrer was therefore not erroneous. The plaintiff was rightly nonsuited.

Judgment affirmed with costs.