## EDWARD J. WALTER *vs.* VICTOR G. BLOEDE CO.

*Sales—Memorandum Under Statute of Frauds Cannot be Altered by Parol Agreement Changing Time of Delivery—Rescission of Contract for Failure of Seller to Deliver Instalments—Evidence.*

When the written memorandum of a contract for the sale of goods within the Statute of Frauds mentions a time for delivery, a subsequent agreement between the parties, not in writing, substituting a different time for delivery is not binding, and evidence of such parol agreement changing the written contract is not admissible.

In an action for breach of a contract to buy goods the plaintiff is not entitled to recover unless it be shown that he was ready and willing to make delivery as required by the contract, and consequently evidence relating to such readiness is admissible.

The question whether defendant had waived strict performance of a contract of sale is a question of law and not of fact.

When a contract for the sale of goods provides for the delivery of specified quantities per month during six months, beginning in November, to be paid for as delivered, and the buyer receives and pays for the November delivery, but the seller fails to make any delivery in December and January, declaring his inability to make deliveries as promised, then the buyer is entitled to rescind the contract.

Appeal from the Superior Court of Baltimore City (STOCK-BRIDGE, J.)

*Plaintiff's 1st Prayer.*—The plaintiff prays the Court to rule that the failure of the plaintiff to make shipments from Europe as provided by the contract of sale of October 27th, 1899, during the months of December, 1899, and January, 1900, did not terminate, or authorize the defendant to terminate, said contract, and if the Court finds that on or about the 19th day of February, 1900, the defendant refused to accept any further shipments thereunder, the plaintiff is entitled to recover such damages as he may have suffered by reason of the refusal of the February and March shipments.   (*Refused.*)

*Plaintiff's 2nd Prayer.*—That the failure of the plaintiff to make shipments from Europe as provided by the contract of sale of October 27th, 1899, during the months of December,

1899, and January, 1900, did not terminate, or authorize the defendant to terminate, said contract, and if the Court finds, that on or about the 19th day of February, 1900, the defendant refused to accept any further shipments thereunder, the plaintiff is entitled to recover such damages as he may have suffered by reason of the refusal of the March shipment. (*Refused.*)

*Defendant's 1st Prayer.*—The defendant prays the Court to rule, as a matter of law, that if the Court, sitting as a jury, shall find that on the 27th day of October, 1899, the defendant entered into the contract offered in evidence for the purchase from the plaintiff of fifty tons of tapioca flour to be shipped per steamer from Europe at the rate of ten tons in November, 1899, ten tons in December, 1899, ten tons in January, 1900, ten tons in February, 1900, and ten tons in March, 1900, and that on the 27th day of November, 1899, the plaintiff delivered to the defendant 16,653 pounds of flour on account of November delivery called for by said contract, and that the same has been paid for by the defendant, but shall find that the plaintiff failed thereafter to make any of the deliveries called for by said contract, and from time to time between the first day of December, 1899, and the 19th day of February, 1900, wrote and sent to the defendant the letters offered in evidence notifying defendant of his inability to make the deliveries called for by said contract.

And shall further find that on the 19th day of February, 1900, the defendant wrote and sent to the plaintiff and the plaintiff received the letter of the 19th of February, 1900, offered in evidence cancelling the said contract then the verdict must be for the defendant, unless the Court shall further find that the defendant by some memorandum in writing signed by the defendant or by some one, by it authorized, or by part delivery of the goods, or by part payment therefor, waived the defaults in deliveries committed by the plaintiff, if the Court shall find said defaults, or whereby it released the plaintiff from making the deliveries called for by said contract at the times mentioned in said contract. (*Granted as amended.*)

· *Defendant's 2nd Prayer.*—That there is no evidence in this case legally sufficient to show that the. plaintiff was at any time between the 27th day of November, 1899, and the 1st of March, 1900, ready or able to make any of the deliveries called for by the contract of October 27th, 1899, if the Court shall find said contract. (*Granted.*)

*Defendant's 3rd Prayer.*—That there is no evidence in this case legally sufficient to show any valid legal waiver by the defendant of the terms of the contract of October 27th, 1899, as to the time of deliveries mentioned therein, nor of any valid legal agreement or arrangement whereby the defendant released the plaintiff from making the deliveries called for by said contract at the times mentioned in said contract. (*Granted.*)

·The cause was argued before McSHERRY, C. J., FOWLER, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

· *M. R. · Walter*, for the appellant.

. The appellant claims that the evidence of the oral agreement extending the time for delivery was admissible, and that the extensions were valid and binding upon the appellee. The contention of the appellee is, that the evidence would vary the contract, and being oral, is inadmissible, because the contract is within the seventeenth section of the Statute of Frauds. But the answer to this is, that it does not vary the contract, but simply extends the time for its performance, and this Court has already held such evidence admissible in like cases. *Franklin* v. *Long*, 7 G. &. J. 417; *Watkins* v. *Hodges,* 6 H. & J. 38; *Reed* v. *Chambers*, 6 G. & J. 490.

. Assuming for the present that all the parol evidence heretofore mentioned is to be excluded, the appellant claims that he is entitled nevertheless to recover damages for the February and March deliveries. The contract of October 27th, 1899, is a divisible one, and the inability of the appellant to make the deliveries due at-the time of· the cancellation, did not entitle the appellee to cancel the contract as to the deliveries thereafter to be made. Contracts similar to this have been

held by this Court to be divisible. *Maryland Fertilizer, etc., Co.,* v. *Lorentz & Rittler,* 44 Md. 218; *Bollman* v. *Burt,* 61 Md. 421.

But if the oral evidence excluded be held admissible for the purpose of establishing, and should be found sufficient to establish a waiver as claimed above, then there would have been no default by the appellant, and the cancellation of the contract by the appellee was without cause, and the right of the appellant in connection with the February and March deliveries would be the same as if all the former deliveries had in fact been made. *Maryland Fertilizing Co.* v. *Lorentz* and *Bollman* v. *Burt, supra.*

*Robert Biggs,* for the appellee.

To entitle the appellant to sue for damages for breach of the original contract, he must have been able to allege and prove that he was ready and willing to perform his part of the contract. This he was, confessedly, unable to do, and he was, therefore, driven to set up a new contract, that of December 18th, 1899. Being unable to allege and prove that he was ready and willing to perform this new contract, he set up and sues upon the contract of February 2nd, 1900, the terms of which were made sufficiently loose and elastic to cover any contingency that might arise. The original contract clearly came within the provisions of the Statute of Frauds. The lower Court, we respectfully submit, properly excluded this parol proof offered to establish the contract of December 18th, 1899, and of February 2nd, 1900. *Browne on Statute of Frauds,* sec. 411, 416; *Benjamin on Sales,* sec. 216; *Stead* v. *Dawber,* 10 Ad. & E. 57; *Hill* v. *Blake,* 97 N. Y. 216.

The case before the Court must be distinguished from a line of cases following *Ogle* v. *Lord Vane,* L. R. 2 Q. B. 275, where the vendor *being ready and willing* to perform his part of the contract, *is requested by the vendee* to stop deliveries, and the vendor by reason of such request, fails to make deliveries within the time required by the contract. The failure to deliver not being the result of *a new contract, but of a*

*voluntary forbearance.* In this class of cases the facts being proven, the vendee is estopped to deny that vendor *was ready and willing to comply with the original agreement,* and the vendor is allowed to recover. *Benjamin on Sales,* sec. 217A, p. 190.

In *Norrington* v. *Wright,* 115 U. S. 188, 205, the contract sued on was almost identical with the contract in the case now before the Court. The vendor was to deliver 5,000 tons of iron at the rate of about 1,000 tons per month, beginning February, 1880; but whole contract to be shipped before August 1st, 1880. The vendor instead of shipping about 1,000 tons in February and about 1,000 tons in March, shipped 400 tons in February and 885 tons in March. *Held,* " His (vendor's) failure to fulfill the contract on his part in respect to these first two instalments, justified the defendant (vendee) in rescinding the whole contract." The same law is fully sustained in *Rugg* v. *Moore,* 110 Pa. St. 236, 242; *Pope* v. *Porter,* 102 N. Y. 366, 370; *King Philips Mills* v. *Slater,* 12 R. I. 82–85.

PEARCE, J., delivered the opinion of the Court.

On October 27th, 1899, the appellee entered into a written contract with the appellant to purchase of him 50 tons of 2,240 pounds each, of tapioca flour of a certain brand, to be shipped by steamer from Europe, and to be delivered at Canton, Baltimore, ten tons monthly, from November, 1899, to March, 1900, both inclusive. Payment to be made in cash, at the rate of 4¼ cents per pound upon arrival of each lot ; and this action was brought by the appellant to recover damages for the alleged breach of this contract by the appellee in refusing to accept and pay for part of the flour thus purchased.

About 7½ tons were delivered November 27th, 1899, which the appellee accepted and paid for, but no further deliveries have been made by the appellant.

The declaration set out the contract fully, and the delivery made as above, and then averred that on December 18th it was agreed between the parties that the shipments of the remaining 42½ tons should be monthly during January, Feb-

ruary, March and April, 1900, instead of December, 1899, and January, February and March, 1900, as stipulated in the written contract; and that still later, on February 2nd, 1900, plaintiff informed defendant that for reasons then explained, and beyond his control, there would be still further delay in the monthly shipments from Europe, and that he would not be able to make deliveries as agreed upon December 18th, and that defendant then waived the monthly deliveries as agreed upon December 18th, and agreed to accept the same as they arrived. The defendant pleaded the general issue, and the case was tried before the Court without a jury, the verdict and judgment being for the defendant. Four exceptions were taken by the plaintiff to rulings upon the testimony and one to the ruling upon the prayers, the main question in the case being whether a verbal agreement for the extension of time for the deliveries fixed by the contract is admissible in evidence.

It is settled that at common law the parties to a written agreement, not under seal, before any breach has occurred, may, by a mere oral agreement vary one or more of the terms of the contract, or wholly waive, or annul it, and thus make a new contract resting partly in writing and partly in parol, and as such remaining obligatory upon the parties. *Browne on the Statute of Frauds*, 5th ed., sec. 409; *Kerr's Benjamin on Sales*, sec. 240.

But the question here is, whether this rule is applicable in this State to contracts required to be in writing by the provisions of the Statute of Frauds. In England it was held by LORD ELLENBOROUGH, in *Cuff* v. *Penn*, 1 Maule & Selwyn, 21, that the rule was applicable there. In that case there was a written contract for the purchase of 300 hogs of bacon to be delivered at fixed times, and in specified quantities. After part delivery defendant requested plaintiff not to press delivery of the residue as sale was dull, to which plaintiff assented, and the Court said this was only a parol dispensation of performance of the original contract in respect to the times of delivery, and was not affected by the Statute of Frauds; thus distinguishing be-

tween the *contract itself*, as being the only thing required by the statute to be in writing, and the *performance* of the contract as something distinct from the contract, and to which the statute has no application. But the authority of that case does not appear to have been ever fully accepted in England, and has long been regarded there as overruled by later cases. In *Stead* v. *Dawber*, 10 Ad. & El. 57, it was distinctly doubted by LORD DENMAN, who declined to follow it, though not overruling it otherwise than by the course of his reasoning. In *Marshall* v. *Lynn*, 6 Meeson & Welsby, 109, the point to be decided, as stated in the opinion, was, where a written contract for the sale of goods within the statute, stated a time for the delivery of the goods, whether an agreement to substitute another day for that purpose, if made by parol, could be binding; and it was held in an opinion by BARON PARKE, that it could not. In the course of that opinion he said, "as the case of *Cuff* v. *Penn*, which had before been very much doubted, appears to have been overruled by *Stead* v. *Dawber*, we do not think it necessary to do so," and the rule thus laid down has been firmly established by later cases as the law in England. *Browne on the Statute of Frauds*, sec. 411; *Kerr's Benjamin on Sales*, sec. 240.

In this country there is some divergence of opinion among the States, though the weight of authority seems to be decidedly with the English rule, and the Supreme Court of the United States is in full accord therewith.

In *Swain* v. *Seamens*, 9 Wallace, 271 (76 U. S.) it is said: "Views of the complainants are that an agreement, though in writing and under seal, may in all cases, be varied as to time or manner of its performance, or may be waived altogether, by a subsequent oral agreement; but the Court is of a different opinion, if the agreement to be modified is within the Statute of Frauds. * * * * Reported cases may be found where that rule is promulgated without any qualification; but the better opinion is that a written contract falling within ·Statute of Frauds, cannot be varied by any subsequent agreement of the parties, unless such new agreement is also in

writing. Express decision in the case of *Marshall* v. *Lynn* is that the terms of a contract for the sale of goods falling within the operation of the Statute of Frauds cannot be varied or altered by parol." And to the same effect are the cases of *Emerson* v. *Slater*, 22 Howard, 28; *P. W. & B. R. R. Co.* v. *Trimble*, 10 Wallace, 367 (77 U. S.); *The Delaware*, 14 Wallace, 579 (81 U. S.); *Hawkins* v. *United States*, 96 U. S. 689.

But the appellant contends that in Maryland a contrary rule has been declared in three cases, which it will therefore be necessary to consider carefully.

The first of these cases is *Watkins* v. *Hodges & Landsdale*, 6 H. & J. 37. The head note of that case is in these words: "A subsequent parol agreement to postpone the delivery of articles under a contract without seal, is not a waiver of the contract, but only an enlargement of the time of its performance," and this is fairly abstracted from the opinion, which cites and relies upon *Cuff*. v. *Penn, supra;* but it will be seen upon examination of *Watkins* v. *Hodges & Landsdale*, that the subsequent agreement for delay in delivery, was in writing, and no question involving the Statute of Frauds was before the Court. Consequently, whatever inference may be drawn as to what the Court would have decided, had the agreement been verbal merely, the point here involved was not there decided.

The second of these cases is *Reed* v. *Chambers*, 6 G. & J. 490. On October 18th, 1829, Reed by contract in writing agreed to sell Spencer his farm for $7,000, it being then subject to a judgment held by Anderson under which execution had been levied on the farm, and to a mortgage held by Gettings, these two liens amounting to more than the purchase-money. There were also other later liens. Spencer was to pay out of the $7,000 Gettings mortgage, and was also to pay Anderson's judgment in full by December 2nd. On November 2nd, it was agreed by parol between Reed, Spencer and the sheriff, for the purpose of securing title to Spencer, that the land should be sold by the sheriff under the Anderson execution, and Reed died the same day, November 2nd. The

land was sold under that execution, and at that sale Judge
Chambers, who had previously bought Spencer's interest
under the contract, became the purchaser for a sum which
added to the mortgage debt, amounted to $7,000, and subse-
quently sold his title to Mitchell for $8,500, with the under-
standing that Mitchell should pay Gettings and Anderson, and
pay the balance to him.  It was then further orally agreed
between the parties interested that Mitchell should be returned
as purchaser and obtain a deed from the sheriff, that being re-
garded, as stated in the opinion of the Court, as " the most
eligible method of obtaining title, for which purpose the land
was again exposed to sale, and Mitchell bid a sum which,
added to the mortgage, amounting to $8,500."   The sheriff
reported the sale as made to Mitchell for $4,939.50 and the
Court ordered the same to be applied to the execution under
which the land was sold, and to other judgments which were
liens at the time of Reed's sale, except the sum of $1,500
which was paid into Court.   Judge Chambers then filed a bill
in equity against Reed's heirs and administrators asking a
decree directing the payment of this $1,500 to him, which de-
cree the Court gave, and on appeal, this Court affirmed the
decree, saying :   "The $7,000, the purchase-money agreed
to be paid to Reed, having been applied to the payment of the
mortgage debt and the judgment, the question for the Court
to decide is whether the complainant is entitled to the $1,500,
the surplus money beyond the sum agreed to be paid to Reed,
which Mitchell bid for the land under his contract with com-
plainant.   There can be no question but that the contract be-
tween Reed and Spencer was legal and binding upon the
parties, it being in all respects perfectly conformable to the
requisitions of the Statute of Frauds and Perjuries.   The ver-
bal agreement entered into on November 2nd of the same year
was no variation or change of the written contract for the sale
of the land, but only indicated the mode in which the title was
to be secured to Spencer by Reed.  It was in effect to carry the
contract into execution, and not to add to, vary or change it."
It will be seen from the above recital of facts, condensed from

the statement made by the Court, not only that the contract between Reed and Spencer and Judge Chambers, was fully executed, but that between Judge Chambers and Mitchell also, the liens provided for by both contracts being fully paid and the surplus purchase-money being paid into Court, so that there was in fact no question under the Statute of Frauds before the Court, since the statute has no application to executed contracts. *Browne on Statute of Frauds*, sec. 116.

The third and last of these cases is *Franklin* v. *Long*, 7 G. & J. 417, a leading case in Maryland, the authority of which upon the points actually arising and decided, has never been questioned in this State. The subject of the contract in that case was a negro slave which the appellant has agreed to purchase of the appellee. The contract, which was in writing, was made and dated July 5th, 1833, and consisted of a receipt from the appellee to the appellant's agent for $460 in full payment for negro man John, warranted to be sound in body and mind; and of an order on the sheriff, in whose custody the negro was, to deliver him to the agent. When this order was presented it was discovered that the negro had cut his throat before payment of the purchase-money, and was dead. The sheriff offered to deliver his body, which the purchaser refused to receive, and brought suit against the seller for money had and received. At the trial the plaintiff proved that his agent in the latter part of June, 1833, agreed to purchase this negro from the defendant, the defendant agreeing upon payment of the purchase-money, to deliver the negro, and that on July 5th the receipt and order above mentioned were executed when the purchase-money was paid. The Court instructed the jury that the parol agreement was not legal evidence in the cause, and that the receipt and order of July 5th was the only contract on which the defendant was legally responsible, and this Court declared that instruction correct, on the ground that the parol agreement was void under the Statute of Frauds, and not admissible in evidence, either as the foundation of the action or to vary or extend the written contract of July 5th, " the parol agreement of June, 1833, not coming within the

principle on which a subsequent parol agreement, not contradicting the terms of the original contract, but extending only the time of performance, may be admitted." It cannot be denied that from this language an inference arises, that if the parol agreement had been subsequent to the written contract, the Court would have held it admissible for the purpose of extending the time of performance, but neither can it be denied that the language was clearly *obiter dictum*, and in view of the great weight of adverse authority both here and in England we are not prepared to adopt the *dictum* of even so great a Judge as CHIEF JUSTICE JOHN BUCHANAN.

It should be observed that this case was decided in 1836; *Cuff* v. *Penn*, not having been overruled in England until the decisions in *Stead* v. *Dawber* and *Marshall* v. *Lynn, supra*, in 1839 and 1840, respectively.

The learned editor of *Kerr's Benjamin on Sales* in his note on sec. 240, refers to these three cases above as establishing a rule in Maryland at variance with that of the text, as established by the adjudicated cases, and it is not surprising that he should have done so, if he did not make a critical examination of the opinions delivered, and we refer to the matter here in order to secure the correction of this inaccuracy in any future edition of this valuable work, by that annotator.

The first, second and third exceptions were taken to rulings excluding parol evidence offered to show that the time for making deliveries had been extended, and it follows from what we have said that there was no error in these rulings. Apart from these reasons, the ruling on the third exception was correct, because in asking if there had not been a waiver by defendant of the delivery of the December shipment, a question of law was proposed to the jury.

We find no error in the admission of plaintiff's letter of February 19th to defendant, which constitutes the subject of the fourth exception. Plaintiff was not entitled to recover in any event unless it was shown that he was able and willing to make delivery as required by the contract, and that letter bore directly upon that question.

The contract in this case is closely analogous to that in *Maryland Fertilizer Company* v. *Lorentz & Rittler*, 44 Md. 218, and is governed by the reasoning of that case.   Here payment was to be made in prompt cash upon the arrival of each lot, and every delivery except the last, assuming the contract to have been specifically performed, might have been satisfied and paid for before the vendee could know whether the whole quantity of flour contracted for would be delivered.   " The parties under these circumstances could not have considered the contract entire and indivisible either in quantity or in the details of performance."   44 Md., *supra*, 232.   The plaintiff's two prayers were nevertheless properly rejected, first, because they do not require the Court to find that the plaintiff was able and willing to make the deliveries therein mentioned in accordance with the terms of the contract, and second, because if they had so required the Court to find, there was no evidence legally sufficient to support such finding.   For this last reason the defendant's second and third prayers were properly granted.   There was no error in granting defendant's first prayer as amended, which gave the plaintiff the benefit of everything to which he was entitled under the evidence, and the judgment must therefore be affirmed.

*Judgment affirmed with costs to appellee above and below.*