## GEORGE H. SPELLMAN *v.* DUNDALK COMPANY.
[No. 39, January Term, 1933.]

*Decided March 22nd, 1933.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Abraham Rosenthal,* for the appellant.

*William L. Marbury, Jr., Jesse Slingluff, Jr.,* and *Marbury, Gosnell & Williams,* submitting on brief, by direction of the Court, for the appellee.

PARKE, J., delivered the opinion of the Court.

The plaintiff, George H. Spellman, entered into a written contract with the Dundalk Company, a corporation, defendant, for the purchase of an unimproved lot of land. The contract is dated April 1st, 1926, and was signed, sealed, and delivered by the vendor and vendee. The purchase price was $1,200, of which $120 was paid by the vendee to the vendor on the execution of the contract, and the residue was agreed to be paid by the vendee to the vendor, at the latter's office, in equal monthly installments of $12, until the entire purchase money and interest on the credit payments be paid, with the privilege of the vendee to anticipate, whenever he chose, any or all of the then unpaid purchase money and accrued interest. The taxes on the lot which had accrued due on the day of the sale were to be paid by the vendor, and all subsequent taxes and assessments for improvements were to be paid by the vendee, or, if paid by the vendor, to be added, with interest, to the purchase price.

Upon the receipt of the purchase price and interest in full and the surrender of the contract of sale, the vendor agreed to convey to the vendee the lot sold. The parties stipulated that time was the essence of the contract, and, in the event that the vendee should fail to pay any installment of the purchase price, with interest as agreed, that the vendor could declare the contract void, and all amounts paid before the time of the default should be and become the property of the vendor as liquidated damages for the breach of the contract by the vendee. There were other terms of the contract, but the ones stated are those which relate to the present controversy.

The vendee paid the down money and his first monthly installment, and received from the vendor a copy of the contract of sale, a receipt book, and a copy of deed and agreement containing the building and other restrictions upon his lot. The other installments were made with practical regularity until his payment of September 11th, 1928. After that credit, he made his only other payment on May 24th, 1929, when he paid $60. The vendor gave the vendee an

account or receipt book in which he was charged according to the terms of the contract, and credited with every payment. The book was balanced semi-annually as of the last days of June and December, when he was charged with the principal due, with interest and taxes, and a balance struck, after giving him all his credits. The last calculation of this kind was on December 31st, 1928, when the residue ascertained was $878.28. This sum, with interest and taxes, subject to the credit of May 24th, 1929, of $60, is what remained due according to the terms of the contract.

On July 24th, 1930, the vendee was notified by the vendor that, because of his having defaulted in the performance of his contract to buy, the vendor declared the contract void and all amounts paid thereunder forfeited to the vendor as liquidated damages for the breach. It will be observed that this notification was given at the expiration of fourteen consecutive months of default on the part of the vendee. During this period he not only did not make a single payment, but neither he nor any one in his behalf communicated in any manner with the vendor or its representatives. The vendee's explanation of this conduct is that no representative ever informed him that the terms of the contract would be enforced against him, and that, shortly after the contract had been made, he had been told by a clerk, after she had interviewed some one in the office, whom the vendee did not know and whose position or power is not established, that it would be all right if the installments were not made regularly and that the vendee could make the payments when he was able, at his convenience. The explicit terms of his contract prescribed and informed the vendee of his rights and obligations. He is bound by these terms, and they cannot be changed nor rescinded by the loose oral statement of an unidentified person whose connections, duties, or power to bind are wholly unknown. Furthermore, the facts stated do not disclose that the asserted promise was made upon any consideration moving from the vendee to the vendor, nor that it resulted in any detriment to the vendee, or altered, in reliance thereon, his position to his harm or disadvantage, so the facts are not

sufficient to operate as a waiver of the vendor's rights to enforce the contract, nor do they amount to an estoppel.

The first, or April, 1926, installment, was not paid until the following May, but after that the monthly installments were every one regularly met by monthly payment or by anticipatory payment of the monthly installment, until July, 1928. The July, August, and September installments of that year were not paid until September, when a payment was made covering these three months and that of the ensuing October. There was then a break in the credits until May 24th, 1929, when the vendor accepted the last payment of $60, which discharged the past-due installments to April, 1929. The acceptance of this last credit was an election by the vendor not to exercise its option to declare the contract void for prior defaults in payment of the installments, but did not deprive the vendor of its rights under the contract with respect to future defaults. *Keefe v. Fairfield*, 184 Mass. 334, 68 N. E. 342; *Drake v. Lippman*, 234 Mich. 80, 208 N. W. 50; *Janes v. Towne*, 201 Iowa, 690, 207 N. W. 790; *Cassiday v. Adamson*, 208 Iowa, 417, 224 N. W. 508; *Beck v. Swank*, 55 Cal. App. 552, 203 P. 1010; *Halsted v. Little*, 25 Me. 225.

No payments were afterwards made by the vendee; and fourteen months later the vendor sent to the vendee a written notice declaring the contract void, and the amounts paid forfeited as liquidated damages for the vendee's breach of the contract. This notification was on July 24th, 1930, and the vendee took no action until January, 1931, when he employed an attorney, who made on January 10th, 1931, a demand upon the vendor for a refund of $552, the total of the payments made. The vendor refused to return this sum, but offered to revive the contract, if the vendee would agree to fulfill its terms. The vendee declined the offer, and brought an action to recover the money which the vendor retained under the terms of the contract.

At the conclusion of the plaintiff's case, the court granted an instruction directing the jury to find a verdict for the defendant, and this appeal is from a judgment in favor of

the defendant. An exception to this action of the court and to certain rulings on the evidence are the questions on appeal.

The terms of the contract made the monthly payments of the essence of the contract. While the acceptance of some irregular payments was an election by the vendor not to enforce the right of the vendor to declare a forfeiture because of these particular defaults, this election did not modify the terms of the contract under seal with respect to the time of the future payments. The effect of this action of the vendor did not alter in any way the position of the vendee to his prejudice, so any permission implied was withdrawn by the letter of the vendor to the vendee of July 24th, 1930, before any other payment was made by the vendee to the vendor, because this letter advised the vendee that the vendor proposed to enforce the contract according to its tenor. From this point, the vendee knew that the period of indulgence was at an end, and that the vendor was insistent on his strict legal rights. The vendee, however, remained silent, and apparently acquiesced in the position taken by the vendor, since he neither offered to pay, nor paid, any of the due and accruing due installments. *Glock v. Howard, etc., Co.,* 123 Cal. 1, 55 P. 713. While thus in default, the vendee employed an attorney in January, 1931, who, in that month, demanded of the vendor the return of the payments which had been made by the vendee, and, at the same time, declined to accept for the vendee the offer of the vendor to perform the written contract on the vendee's fulfilling his undertakings. A month later the vendee began the action at bar without availing himself of the opportunity afforded to obtain a complete performance of the contract. See *Shriver Oil Co. v. Interocean Oil Co.,* 157 Md. 341, 352, 353, 146 A. 223.

The case, therefore, is simply one where the plaintiff has violated the contract in a material matter, and, declining to perform his own solemn obligations because he so wills, would make his own breach of the contract under seal the basis of an action at law. The vendor has always been ready, able, and willing to perform its part of the contract. Under these

circumstances the following statement and comment by Judge Miller in *Davis v. Hall*, 52 Md. 673, at page 682, is strikingly apposite: "The vendee paid the first instalment, and then refused to complete the contract and left the premises. The vendor afterwards sold the property to another party, and the vendee then brought assumpsit to recover back what he had paid. The court held that a party who has advanced money or done an act in part-performance of an agreement, and then stops and refuses to proceed to the ultimate conclusion of the agreement, the other party being ready and willing to proceed and fulfill all his stipulations according to the contract, has never been suffered to recover for what has been thus advanced or done." See *Hansbrough v. Peck*, 5 Wall. 497, 18 L. Ed. 520; *Ketchum v. Evertson*, 13 Johns. (N. Y.) 359, 7 Am. Dec. 384; *Battle v. Rochester Bank*, 3 N. Y. 88; *Rounds v. Baxter*, 4 Me. (4 Greenl.) 454; *Donahue v. Parkman*, 161 Mass. 412, 37 N. E. 205; *Keefe v. Fairfield*, 184 Mass. 334, 68 N. E. 342; *Hill v. Grosser*, 59 N. H. 513; *Steinbach v. Pettingill*, 67 N. J. Law, 36, 50 A. 443; *Security Invest. Co. v. Meister*, 214 Mich. 337, 183 N. W. 183; *Crenshaw v. Granet*, 237 Mich. 367, 211 N. W. 636; *Speed v. Bailey*, 153 Md. 655, 666, 139 A. 534; *Willson v. Baltimore*, 83 Md. 203, 214-216, 34 A. 774.

In response to questions on cross-examination, the vendee testified that, after he received this notification from the vendor, he made no offer to pay the accrued due installments; and that his attorney, whom he had employed to obtain the money which the vendee had paid to the vendor, advised the vendee that the vendor was willing to revive and perform the contract, but the vendee was unwilling to carry out his part of the contract. The testimony in this paragraph was obtained by reason of the court's sound ruling that it was proper cross-examination, as it was based on the testimony of the witness in chief and related to a material and relevant subject matter. So no error is found in the first four bills of exceptions.

Laura V. Spellman, mother of the vendee, testified that she had frequently made for her son payment of the installments

that were credited in the book, and that, within one month of the date of the contract, she had talked, away from the office, with the man who had made the sale of the lot, in reference to the payments under the contract, and to the court's refusal to allow her to testify to the statement then made by the sales agent the vendee took an exception. The mother further swore that she had frequent conversations with a young woman clerk in the office of the vendor, where the payments were received and the business of the vendor conducted, and that, about six or eight months after the date of the contract at bar, she talked with this clerk in the office with reference to changing the time, manner, and amounts of the payments under the terms of the contract, and that the clerk had gone back and talked to a man, who apparently was in charge of the office, and on her return the clerk had reported that it would be all right, but the court declined to let the witness repeat what the clerk had said to the mother of the vendee, and an exception to this ruling is the last one on the testimony.

There is nothing in the record to show the relevancy or materiality of this excluded testimony. What it was proposed to prove by the questions put is not disclosed by an offer, and the nature of the testimony already given does not supply the omission. If the purpose was to show a subsequent parol modification of the covenants of the contract in writing under seal, it would be inadmissible, since the contract was for the sale of land and so within the statute of frauds; and, even if admissible, in the absence of any information of what the proposed testimony was, no injury by the exclusion is discernible. *Abrams v. Eckenrode,* 136 Md. 244, 247, 110 A. 468; *Walter v. Bloede Co.,* 94 Md. 80, 50 A. 433.

There being no error in the court's rulings on the prayer and the testimony, the judgment will be affirmed.

*Judgment affirmed, with costs to the appellee.*