CHARLES T. WILLIS v. THE GERMANIA & HANOVER FIRE INSURANCE COMPANIES.

*Fire-Policy—Conditions—Conduct of Assured.*

1. Where the holder of a policy of insurance against fire complies substantially with all the requirements of the contract between himself and the insurers, immaterial variations will not vitiate it.

2. Where a fire-policy forbids the keeping by the assured of benzine, camphine "or any explosive," it is a question of fact for the jury whether or not certain alcohol kept in the store of the policy holder was an explosive under the particular circumstances of the case. At any rate, it can not be so considered in the absence of a finding to that effect.

3. If such a policy authorize the keeping of kerosene of a certain quality, it will rest upon the insurers in case of a loss to show ; (1) that the kerosene was not of that quality, and (2) that the fire originated or was influenced by the kerosene kept.

4. An instruction by a policy holder to his agents not to interfere in case of fire unless the entire stock could be saved, in order that no dispute might occur with the insurers as to the amount of a loss, will not stand in the way of a recovery where it affirmatively appears that no efforts of the assured or his agents could have averted the loss.

CIVIL ACTION tried at the December Special Term, 1877, of ROBESON Superior Court, before *Cox, J.*

This action was brought to recover the amount of a policy of fire insursance issued by the defendant com-

panies at the instance of the plaintiff, to indemnify him against the loss by fire of his store house and stock of goods. The facts embodied in the opinion delivered by Mr. Justice READE are deemed sufficient to an understanding of the case. Upon issues submitted and under the instructions of His Honor the jury rendered a verdict for plaintiff. Judgment. Appeal by defendant.

*Messrs. G. Leitch* and *McNeill & McNeill,* for plaintiff.
*Messrs. W. F. French, J. W. Hinsdale* and *P. D. Walker,* for defendant.

READE, J. The plaintiff upon beginning mercantile business, to guard against the danger of ruin to himself and probably to his creditors, insured his store house and goods in the defendant company against fire. His store and goods were burned, and instead of the safety which he sought and paid for, he finds himself involved in a three years law suit with the defendant. There could be no objection to this if the plaintiff had provoked it by any misconduct, or if the defendant had any substantial defence; but the findings of the jury are, (1) that the plaintiff owned the property absolutely, (2) that its value was as much as he represented it to be at the time of its insurance and that it was still more at the time of the fire, (3) that the representations upon which the policy was based were true, and (4) that he had performed all the conditions and requirements on his part contained in the policy. What more could he have done. The defences are frivolous, and as found by the jury untruthful. They are:—

1. That the plaintiff was not the absolute owner of the property insured, in the particular, that in his stock of goods there was a barrel of wine worth some $60 or $80 which he had to sell on commission. Grant that to be so, still there were goods enough besides that to fill the demand

of the application and the policy. The policy secured only $1050 value of goods. That is three-fourths of $1400. There was more than $1400 value of goods at the time of insurance and $1700 at the time of the fire, leaving out the wine. But however that may be the verdict of the jury is, that the plaintiff was the absolute owner of the goods, and they make no exception as to the wine.

2. That the plaintiff did not give immediate notice of the fire to the general agent of the defendant in New York. The facts in detail upon that point are, that the plaintiff within a few days gave notice to the local agent of the defendant in Wilmington, N. C., and the local agent gave the notice to the general agent in New York, and thereupon the defendant sent an agent to the plaintiff to examine the matter. His Honor left these facts to the jury from which they might infer an acceptance of the notice given as suffi-cient. We think His Honor might have gone further and charged the jury that these facts being true there was notice. At any rate the jury found notice. There was substantial compliance which was accepted and acted on by the defendant.

3. That the plaintiff had not furnished the specific proof of the amount of loss. The facts in regard to this are, that the plaintiff's bill and invoices of goods were burned so that he could not furnish the agent that evidence. But by mutual consent the settlement was postponed until the plaintiff could get duplicates of his purchases. At the time agreed on they again met, when being unable to agree they separated, and the agent returned to New York. We are not informed as to the particulars of their disagreement, and it does not appear that any other evidence of loss was demanded, or that the precise evidence mentioned in the policy was insisted on. It does appear that by consent duplicates of purchases were resorted to, and it does not appear that the agent required any particular proof which

was refused. And it would seem that while they were attempting to treat about the loss, and the plaintiff offered such evidence as was in his power, and it was unsatisfactory to the agent, he ought to have said in what it was unsatisfactory. Indeed we are to take it that the objections which he made then are the same as made now, and that they were frivolous. The finding of the jury is that the plaintiff complied with all the conditions and requirements of the policy.

4. That there was evidence that the plaintiff had on hand in his store, alcohol, and that alcohol was an explosive. It is forbidden in the policy that the plaintiff should keep benzine, camphine, or any explosive. Alcohol is not named. There was no evidence as to whether alcohol is an explosive. Whether it is or not as a fact, depends probably upon circumstances, as its strength, exposure, &c. Whether *the* alcohol in question was explosive or not was certainly not a question of law, as there was no evidence of its quality, and therefore His Honor could not charge that it was an explosive as the defendant requested him to do. And there being no evidence that it was, he had the right to assume that it was not explosive, forbidden in the policy. There was no evidence that the fire originated or was in any way influenced by the alcohol, and then again there is the verdict of the jury that the plaintiff had complied with all the conditions of the policy.

5. That the plaintiff was authorized to keep kerosene oil of standard quality, 110°, and there was no evidence that the kerosene kept was of that quality. There was no evidence that it was not of that quality, and again the jury find that it was, and there is no pretence that the fire originated from or was influenced by the kerosene. It was impossible to apply any test to the kerosene after its destruction.

6. That the plaintiff did not save what might have been

saved at the fire. The facts are that the fire occurred at night, and when discovered it had progressed so far that it was impossible to save any thing. Of course he was not required to perform impossibilities. The only ground for this defence is that the plaintiff had given general instructions to his agent that if a fire occurred, not to interfere unless he could save all, to prevent disputes as to what was consumed. This was wrong, but it worked no wrong, because with the contrary instruction nothing could have been saved.

Insurance contracts are prepared by insurers who have at their command in their preparation the best legal talent and business capacity, and every precaution is taken for their protection. This is made necessary to prevent the frauds of bad men. But on the other hand the insured are generally plain men without counsel, or the capacity to understand the involved and complicated writings which they are required to sign, and which in most cases probably they never read. What they understand is that they are to pay the insurers so much money, and if they are burnt out the insurers pay them so much. Where therefore there has been good faith on the part of the insured and a *substantial* compliance with the contract on their part, the Courts will require nothing more.

It is said in 2 Parson on Contracts 461, on fire insurance, that policies frequently contain express provisions as to notice of loss, and proof and adjustments, and there must be a substantial compliance with all these requirements, and such a compliance is sufficient. If the notice or preliminary proofs are imperfect or informal, all objections may be waived by the insurers, and they will be held to have made the waiver by any act which authorized the insured to believe that the insurers were satisfied with the proofs they had received, and desired nothing more.

And again he says, page 426: "It may be said generally

that warranties, restrictions, or declarations of this kind,. are construed somewhat liberally towards the insured, and somewhat strictly towards the insurers.   It would be reason‹ enough for this that the insurers frame the policy as they choose, and may make the language as strict as they think proper.".

There is no error.   Judgment affirmed and judgment here.

No error.                                   Affirmed.