MAGGIE MOORE v. GENERAL ACCIDENT, FIRE, AND LIFE ASSURANCE CORPORATION, LIMITED.

(Filed 16 May, 1917.)

**1. Insurance, Accident—Premiums—Payment.**

A provision in a policy of accident insurance requiring prompt payment of the premiums as they fall due or that the insurer will not be liable for an injury received during a period within which the premium has not been paid, so pertains to the essence of the contract as ordinarily to require strict observance of it, unless the assurer waives compliance of the assured therewith in some recognized manner.

**2. Same—Waiver.**

Where the insurer has so habitually failed for such time in the past to insist upon prompt payment of the premiums of an accident insurance policy as to have misled the insured to believe that strict compliance would not be enforced, and an accident covered by the policy occurs a day after a premium has become due, which was remitted to the company on the day thereafter, stating on the check that it was for the payment of a three months period, the acceptance of the check by the insured and its premium receipt duly issued, taken in connection with the evidence of the "prior and long-continued course of dealing," is sufficient to be submitted to the jury upon the question of the waiver by the insurer of the condition stated in the policy, and to sustain a verdict in favor of the beneficiary after the death of the insured.

**3. Same—Separate Benefits—Death—Notice.**

Where under the provisions of a policy of accident insurance certain benefits are to be paid to the insured, with distinct provision that in case of accident resulting in death a certain sum is to be paid a beneficiary, the latter, during the lifetime of the insured, is not required to give the ten days notice of the injury which resulted in his death, but only the notice provided for from the time of the latter event; the interpretation of the policy being that the assured and the beneficiary shall each give notice of the event upon which his claim depends.

**4. Same—Proof of Death—Evidence—Questions for Jury—Trials.**

Where the beneficiary under an accident policy promptly notifies the insurer of the death of the insured from an accident, and of his claim under the policy, requesting the proper blanks furnished for the proof of death; and the insurer sends only a disability blank, but which the beneficiary has filled out and returned, containing the statement of the attending physician, with all necessary information, and though informed of

its mistake the insurer continues therein in its correspondence, and does not send the blank applicable, the beneficiary offering at all times to supply whatever information the insurer required: *Held*, evidence sufficient of a compliance with the provision of the policy requiring notice within ten days, and the filing of process, to be submitted to the jury.

**5. Insurance, Accident—Proof of Death—Stipulations as to Suit—Waiver.**

Where an insurer denies all liability under its policy of accident insurance, covering the death of the insured, and refuses to proceed with the investigation respecting it, its action is a waiver of its requirments as to the proof of death and the clause in the policy forbidding the bringing of any suit upon it until after the three months from the filing of the proofs.

**6. Insurance, Accident—Benefits—Independent Provisions.**

Where a policy of accident insurance by its terms prohibits a recovery of the insured was not wholly and continuously disabled from the date of the accident, and there is also an independent liability created for a beneficiary in case the accident results in death, in an action upon the latter brought by the beneficiary the question of immediate, total, and continuous liability is not included, it applying only to the insured and to his life benefits.

**7. Insurance, Accident—Policy Contracts—Ambiguity—Interpretation—Premiums—Payment in Advance.**

A policy of accident insurance, in case of ambiguity, is construed favorably to the assured and beneficiary. Where there is evidence that the insurer has accepted payment of quarterly premiums for one year, as in this case, and there is a provision for additional benefits when premiums have been paid in advance for that time, the question of additional benefits was properly left to the jury.

**8. Evidence—Witnesses—Medical Experts—Opinion—Hypothetical Questions —Evidence.**

The opinion of a medical expert given upon a proper hypothetical question, based on the evidence, as to the cause of death from an injury, is competent, when material and relevant to the inquiry.

CIVIL ACTION, tried before *Carter, J.,* and a jury, at Spring Term, 1917, of IREDELL.

The action was brought to recover the amount alleged by the plaintiff, the beneficiary, to be due upon a life and accident insurance policy issued to her husband, Dr. Nicholas Gibbon Moore, on 24 June, 1910. The policy insured against a total and partial loss from accident, producing injuries and disabling the insured from pursuing his ordinary business, and it also provided for the payment of $1,000 if the accidental injuries caused his death, to be paid to the plaintiff, and, further, for an additional sum of 10 per cent of the amount due under the policy if the premiums have been paid in advance monthly or annually during

a period of twelve months.  The policy recites the payment of the original or first premium, and provides for the payment of the following losses or indemnities:

### TOTAL ACCIDENT DISABILITY.

"A.  At the rate of $100 per month, for a preiod not exceeding twenty-four consecutive months, against total loss of time resulting directly and independently of all other causes from bodily injuries effected through external, violent, or accidental means, and which wholly and continuously from date of accident disable and prevent the assured from performing every duty pertaining to any business or occupation.

### PARTIAL DISABILITY.

"B.  Or if such injuries shall wholly and continuously, from date of accident, disable and prevent the assured from performing one or more important daily duties pertaining to his occupation.

### SPECIFIC TOTAL LOSSES.

"C.  Or if any one of the following specific total losses shall result solely from the injuries described in Paragraph A within ninety days from date of accident, the company will pay in lieu of any other indemnity, for loss of life, $1,000 (the principal sum of this policy)."

The premiums were paid to 1 July, 1915, and the accident which caused the insured's death occurred on 1 or 2 July, 1915, and resulted from his falling from a scaffold while trimming a hedge.  The premium due 1 July, 1915, was paid on 3 July, 1915, and the renewal receipt issued 7 July, 1915.  The other material facts will be stated in the opinion.

The defendant resisted a recovery on the following grounds:

"1. That the policy sued on had lapsed, according to its terms, for nonpayment of premium at the time the injury of which it is contended the assured died was inflicted.

"2. The assured and the beneficiary are barred from recovery on account of their failure to give notice of the happening of the alleged accident in accordance with the terms of the policy contract; or, at least the recovery is limited to one-fifth the amount of the policy by reason of the failure to give notice of the happening of the alleged accident in accordance with the terms of the policy.

"3. That the plaintiff failed to furnish to the defendant proper proofs 'affirmatively establishing the fact that the . . . death is such as comes within the provisions of the policy . . . within thirty days from the date of death,' as provided in paragraph 'n' of said policy.

"4. That this suit was prematurely brought, in that the policy provides that 'No action at law or in equity shall be maintainable before three months . . . from the date on which this paragraph provides that the proofs must be furnished to the company—paragraph 'n' of the policy.

"5. That the death of the assured was not caused and did not occur in such a manner and by such means as to bring it within the terms of the policy so that the principal sum thereof became payable to the beneficiary on account thereof. The defendant contending that the death of Dr. Moore did not 'result directly and independently of all other causes from bodily injuries effected through external, violent, and accidental means, which wholly and continuously from the date of the accident ·disabled and prevented him from performing every duty pertaining to any business or occupation,' as provided in paragraph 'a' of the policy.

"6. That the plaintiff is not entitled to recover anything on account of the accumulation provision of the policy, for the reason that the premiums had not been paid in advance for any consecutive policy year."

The jury returned the following verdict:

1. Was the policy No. E171222 sued on in this case in full force and effect as a binding contract of insurance at the time the assured suffered the alleged injury during the afternoon of 1 July, 1915? Answer: "Yes."

2. Did the death of Dr. Moore, the assured, result directly or independently of all other causes from bodily injuries effected through external, violent, and accidental means? Answer: "Yes."

3. Did Dr. Moore, the assured, pay the premiums on the policy sued on yearly or monthly in advance for a consecutive period of twelve months; and if so, for how many consecutive periods of twelve months? Answer: "Yes; for one period."

4. In what amount, if anything, is the defendant indebted to the plaintiff? Answer: "$1,100, with interest from 1 January, 1916."

Judgment for the plaintiff was entered upon the verdict, and the defendant appealed.

*Z. V. Turlington and H. P. Grier for plaintiff.*
*J. F. Flowers for defendant.*

WALKER, J., after stating the case: It may be conceded at the outset that the provision as to the prompt payment of the premiums when they fall due is a valid one, and so pertains to the essence of the contract as ordinarily to require strict observance ·of it, unless compliance

with it has been waived. Vance on Insurance, p. 213; Kerr on Insurance, p. 392; *Klein v. Ins. Co.*, 104 U. S., 8; *Thompson v. Ins. Co.*, *ibid.*, 252; *Hay v. Assn.*, 143 N. C., 257; *Clifton v. Ins. Co.*, 168 N. C., 499. This doctrine is well established. It is a very usual provision of a policy of accident insurance that it shall not become effective unless the premium is paid previous to an accident, or cover an injury received during an insurance period for which the premium has not been actually paid. 1 Corpus Juris, 409. And it is true that the insured is charged with notice of the terms of the policy affecting his rights under it, and, among them, is the one as to the payment of premiums. *Matthews v. Travelers Assn.*, 144 Pac., 85. But this provision, as well as others, may be waived, or the conduct of the company in its dealings with the insured may prevent it from insisting upon a strict compliance, and this by equitable estoppel.

The policy provides that the company shall not be liable thereunder, if it has lapsed by nonpayment of premium, for any accidental injury happening between the date of such expiration and 12 o'clock noon of the day following the date of the renewal payment. But in this case the jury have found by the verdict, upon sufficient evidence, that the policy was "in full force and effect as a binding contract of insurance at the time that the insured suffered the alleged injury during the afternoon of 1 July, 1915." This verdict was based upon testimony from which the jury might well infer that the defendant had waived the slight deviation of the payment from the time when it was due by the terms of the policy, not only "by its prior and long continued course of dealings," but also by receiving a check for the overdue premium, upon which it was expressly stated that the check should be in payment of the premium for the full term of July, August, and September, 1915, or, in other words, the premium for that entire period; and with this condition plainly written on its face, the defendant received and kept it.

The company, knowing, of course, for what time the premium was tendered, accepted the check and cashed the same. It would seem that fairness to the insured required that if the company was unwilling to take the premium upon this offer, viz., that the premium should cover the whole period, it should not have accepted and appropriated the check. This act, when taken in connection with its previous conduct in regard to overdue premiums, was evidence of its intention to waive the provision of the policy as to prompt payment of the premiums. It was not merely a courtesy or favor extended to the insured, as in *Hay v. Assn., supra.* A casual indulgence would not be sufficient to show a waiver, as decided in that case, and so the judge charged the jury, but he left it to them to find whether there had been such "a long continued course of dealings" on the part of the defendant as showed that it did

not intend to rely upon the delay in payment, but that it extended credit to the insured for the brief space of time. It was said in *Painter v. Industrial Life Assn.,* 131 Ind., 68, approving and quoting from *Sweetser v. Odd Fellows Assn.,* 117 Ind., 97: "It is abundantly settled that an insurance company will be estopped to insist upon a forfeiture if by any agreement, either express or implied by the course of its conduct, it leads the insured honestly to believe that the premiums or assessment will be received after the appointed day. The decisions which hold and enforce this view are very numerous," citing, also, *Michigan, etc., Ins. Co. v. Curtis,* 128 Ind., 25. The following authorities are cited in *Sweetser v. Assn., supra,* in support of the doctrine: *Ins. Co. v. Eggleston,* 96 U. S., 572; *Ins. Co. v. French,* 30 Ohio St., 240; *Helme v. Philadelphia L. Ins. Co.,* 61 Pa. St., 107; *Stylow v. Odd Fellows Mut. Life Ins. Co.,* 59 N. H., 541 (47 Am. Rep., 220); *Teutonia Life Ins. Co. v. Anderson,* 77 Ill., 384; *Hanley v. Life Assn.,* 69 Mo., 380; *Northwestern M. L. Ins. Co. v. Amerman,* 119 Ill., 329. Bacon on Benefit Societies, sec. 431, it is said: "In many cases the company has been held estopped, by its having on former occasions received payment of overdue premiums, from claiming a forfeiture, and also by a promise, express or implied, to receive the premium after it became due." He adopts the rule stated by the Court in *Sweetser v. Assn., supra,* that estoppel by conduct may prevent an insurance company from claiming that there has been a forfeiture of a policy because of a violation of any of its stipulations. When the insured has clearly been misled by the company's course of action in respect thereto, which is calculated to mislead him or throw him off his guard, and cause him to act otherwise than he would have done if he had not relied on the implied waiver by the company of strict performance, and the company will not afterwards be permitted to insist upon exact compliance, or to take advantage of any failure to comply on the part of the insured so that he will be prejudiced thereby; but each case, as he says, is controlled by its own peculiar facts. The Court in *Sweetser v. Assn., supra,* said: "One party to a contract will not be permitted to make a show of continued leniency, or a pretense of liberality, repeated with such uniformity as to put another off his guard, and afterwards, by a sudden change in his course of conduct, declare a forfeiture, when the other party is helpless to avert the consequences." The Court after stating that the rule would not apply to mere occasional indulgence, further says: "But such a course of dealing may be pursued as will estop the company to say that there was no agreement, after it has permitted its policy to stand open and uncanceled, and after it has accepted payment of overdue premiums or assessments in a specified manner, which has been conformed to during the lifetime of the insured, and until the opportunity

to make further collections has been cut short by his death." In *N. Y. Life Ins. Co. v. Eggleston*, 96 U. S., 577, the Court said: "Courts are always prompt to seize hold of any circumstances that indicate an election to waive a forfeiture, or an agreement to do so on which the party has relied and acted. Any agreement, declaration, or course of action on the part of an insurance company which leads a party insured to honestly believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will and ought to estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract. The company is thereby estopped from enforcing the forfeiture."

The principle upon which the court charged the jury in this case seems to be firmly settled. It was clearly recognized, upon the authority of some of the above cited cases, in *Murphy v. Ins. Co.*, 167 N. C., 334. As bearing upon the circumstance of accepting the check for the full period of the three months, July, August, and September, this Court has held in numerous cases that when on the face of the check is stated the purpose for which it is given, or the condition of the payment which it represents, the party to whom it is given or sent cannot accept and use it and afterwards repudiate the condition. *Kerr v. Saunders*, 122 N. C., 635; *Armstrong v. Lonon*, 149 N. C., 434; *Aydlett v. Brown*, 153 N. C., 336, and cases cited therein. But the use of the check is only one of the circumstances tending to show a waiver.

As to the second contention of the defendant, in regard to notice within ten days of the accident, we are of the opinion, and in that respect we agree with the judge who presided at the trial, that notice of the death was sufficient within the meaning of this clause of the policy. In construing a similar policy in *Hoffman v. M. Accident Co.*, 56 Mo. App., 301, 306, the Court says: "The beneficiary, until the death of the insured, had, at most, only an inchoate and contingent interest in the policy. The insurer could not, until that event occurred, recognize her as a party to the contract having a present interest therein. She could have no claim under the contract until the death of the insured, and, therefore, she could give no notice of the accident or injury until that event occurred." This case was approved by the same Court in *Crotty v. Cont. Casualty Co.*, 163 Mo. App., 628. See, also, *Cont. Casualty Co. v. Colvin*, 77 Kan., 561; *Simpkins v. H. C. M. Assn.*, 148 Ia., 543; *Horsfall v. Pac. Mut. L. Ins. Co.*, 32 Wash., 132; *W. C. T. Assn. v. Smith*, 85 Fed., 401; *McFarland v. U. S. Mutual Acc. Assn.*, 124 Mo., 204; *O. F. Fraternal Acc. Assn. v. Earl*, 70 Fed. Rep., 16. In the case last cited it was said: "An accident by a means which is external, violent, and fortuitous, and which produces external, visible mark upon the body, may for a time utterly escape the attention, or even the knowl-

edge, of the person affected, and yet result eventually in mutilation or death. In an accident of the kind which killed Dr. Earl there may be, for a time, as in his case, nothing whatever to suggest the perils insured against, namely, mutilation or death, as possible results. Yet such accidents are within the scope of this policy. A requirement that notice of such an accident must be given within ten days of its occurrence would be rather a cancellation of the policy with respect to a risk distinctly specified therein than a rule of procedure to be followed by the certificate holder—an extinguishment of the insurance, rather than a limitation upon the method of ascertaining the loss to be compensated. If such a requirement be not void for repugnancy, within the rule illustrated by *In re State Fire Ins. Co.,* 32 Law J. Ch., 300, it is so far unreasonable that we cannot put it into the contract by implication. We cannot imply from the words in question a significance which they do not express, when the effect would be to annul part of the insurance specified in the certificate as the subject-matter thereof." It is said in Bacon on Benefit Societies, p. 1071, 1072: "If there was any reasonable doubt as to the proper construction to be placed upon the condition, we would adopt a reasonable one consistent with justice, and, if necessary, apply the rule applicable to a deed poll, that the words shall be taken in their strict sense against the grantor, and liberally in favor of the other party. The court must give practical and reasonable effect to all parts of the contract; not only those affecting one party, but all parties. As the limitation of ten days tends to a forfeiture, which is not favored in law, it must not be shortened by construction to deprive the beneficiary of any of the time allowed by the contract for the protection of her rights. The policy of the law is to maintain contracts and enforce rights thereunder when this can be done without offending the ascertained intention of the contracting parties or some legal principle." And in this connection Mr. Bacon favors the view of the ten days clause stated above. The clause in question here evidently contemplates that notice may be given by the insured or beneficiary according to the circumstances, that is, depending upon whether the injury is fatal or not, for it states the failure "of the assured or the beneficiary" to comply with the requirement shall limit the liability to one-fifth the amount which would otherwise be payable under this policy. The beneficiary could not well give the notice, as he might not know of the accident, and, if he did, he could not anticipate necessarily that it would result in death, or that any right would accrue to him under the policy. The reasonable construction of the policy is that each of them—assured and beneficiary—shall give notice of the event upon which his claim depends. The plaintiff contends that this clause is void under statute, Pub. Laws 1911, ch 209, sec. 2, forbidding the insertion in an accident

policy of a provision limiting the amount of the payment "to a sum less than that of the indemnity stated in the policy and for which the premium has been paid"; but we need not decide this question, and leave it it open for future consideration if it arises again.

The defendant is not in a position to complain of any failure of plaintiff to furnish it with proofs of loss. Plaintiff requested defendant to send the proper blank, as it had agreed to do in the policy, for proof of her claim on account of the death of her husband, which she stated was caused by an accident, and defendant failed to comply with the request, but sent a disability blank as if Dr. Moore had survived the accidental injury or plaintiff was applying for his indemnity. Plaintiff, though, did cause to be properly filled up the blank sent out for the attending physician to execute, and this gave all the information he had as to the cause of death; and plaintiff did not stop there, but offered, if this was not sufficient or a more detailed statement was desired, to comply with any requirements of the defendant in that respect. Upon receiving the papers returned by plaintiff, or the doctor's certificate, with explanation of the nature of the claim, the defendant answered the plaintiff's inquiry by stating, in its letter, that the "final proofs" had been received, but as Dr. Moore was taken ill on 13 September, 1915, and died on the 19th day of the same month, he was not entitled to any benefits, as his policy did not cover illness until after the first week, and then concluded: "We are, therefore, not due him any indemnity, under his policy, and will, of course, cancel his claim on our records." All this was done, notwithstanding that defendant had been informed twice that the claim was for Dr. Moore's death, first by Mrs. Moore, the beneficiary, and then by Mr. Turlington, her attorney, who stated in his letter to the company that the claim was for the death of the insured, which was caused by an accident, and the attorney offered to make the proof complete if it was not already so. The company knew on 24 September, 1915, that the claim was for Dr. Moore's death a total loss in favor of the beneficiary, Mrs. Moore, as her letter of 22 September, 1915, which it had received on 24 September, 1915, so informed it. It was not for indemnity for loss of time during disability caused by accidental injury.

It does not satisfactorily appear why the company should have canceled the claim or policy, under the circumstances, as it did, or at least rejected the plaintiff's claim by refusing to proceed further with her application, instead of accepting her offer to give any further information desired, which was made through her attorney.

This was tantamount to a plain denial of the company's liability. It was said in *Life Ins. Co. v. Higson,* 112 U. S., 696: "As to the proof of loss not being filed, it is conceded that notice of the death was given.

If, when that was done, the agents of the company repudiated all liability and informed the parties that the policy had lapsed, then no proof of loss was required by them, and the failure to file them cannot alter the case." That case was approved in *Higson v. Ins. Co.,* 152 N. C., 206, where other cases to the same effect are cited; I Corpus Juris, p. 479; *Parker v. Ins. Co.,* 143 N. C., 339. The denial of liability was also a waiver of the clause in the policy forbidding the bringing of any suit upon it until three months after filing the proofs had expired. *U. S. Casualty Co. v. Hanson,* 79 Pac. Rep., 176; *Cobb v. Ins. Co.,* 11 Kan., 93; *Phillips v. U. S. Ben. Soc.,* 120 Mich., 142; *Calif. Ins. Co. v. Gracy,* 22 Am. St. Rep., 376; *Ætna Ins. Co. v. Maguire,* 51 Ill., 342. Both questions, as to waiver of proof of loss and as to time of bringing suit, are fully discussed in *Calif. Ins. Co. v. Gracey, supra.* See, also, *Willis v. Ins. Co.,* 79 N. C., 285.

In answer to the position taken by the defendant, that plaintiff cannot recover because the insured was not wholly and continuously disabled from the date of the accident, we need only refer to what is stated in regard to separate indemnities, one of which is for death caused by an accidental injury, in 1 Corpus Juris, p. 469, where the authorities are cited in the note. "When the policy provides separate indemnities for injuries which produce immediate, total, and continuous disability, and for death which results from such injuries, the question of immediate, total, and continuous disability is not involved in a suit for the death indemnity." The reference in the policy to the injuries described in Paragraph A is confined to such only as are bodily, and which were effected through external, violent, and accidental means, directly and independently of all other causes, provided the death of the insured results solely from them, and the above authorities are to this effect. The jury have found that Dr. Moore's death did result from such injuries. The other part of the clause was intended to apply to disability caused by the accident. The following authorities bear upon the several questions involved in the case and conclusively answer all material objections: *McFarland v. M., etc., Accident Assn.,* 124 Mo., 204; *Kentzler v. American, etc., Acc. Assn.,* 88. Wisc., 589; *Trippe v. Prov. F. Society,* 140 N. Y., 23; *U. S. Casualty Co. v. Hanson,* 79 Pac. Rep., 176.

The last contention is that the plaintiff was not entitled to recover anything under the accumulation clause of the policy, as the premiums had not been paid in advance for any consecutive period of twelve months. But the jury have settled this controversy against the defendant, upon evidence sufficient to support the verdict. If there is any ambiguity as to the meaning of the policy, it should receive a construction favorable to the insured and the beneficiary. *Bray v. Ins. Co.,* 139 N. C., 390; *Willis v. Ins. Co.,* 79 N. C., 285. We conclude this part

of the case with the words of *Justice Reade* in *Willis v. Ins. Co.,* 79
N. C., at p. 289: "Insurance contracts are prepared by insurers who
have at their command in their preparation the best legal talent and
business capacity, and every precaution is taken for their protection.
This is made necessary to prevent the frauds of bad men. But, on the
other hand, the insured are generally plain men without counsel, or the
capacity to understand the involved and complicated writings which
they are required to sign, and which in most cases probably they never
read. What they understand is that they are to pay the insurers so
much money, and if they are burned out the insurers pay them so much.
Where, therefore, there has been good faith on the part of the insured
and a substantial compliance with the contract on their part, the courts
will require nothing more."

There are objections to evidence, but they require no separate discus-
sion. It was competent for the medical expert to state that a certain
injury, fully described in the hypothetical question, which was based
upon evidence, would cause death. It was the opinion of an expert upon
a matter involving scientific knowledge and professional experience.
*Mule Co. v. R. R.,* 160 N. C., 252.

We have examined all the material questions presented in the record,
and which were learnedly and ably discussed by counsel, and we have
found nothing that warrants a reversal.

No. error.