Argued September 7; reargued November 14; affirmed December 5, 1933; rehearing denied February 13, 1934

PAINE ET AL. *v.* MEIER & FRANK CO.

(27 P. (2d) 315, 29 P. (2d) 531)

*John C. Veatch* and *R. C. Bradshaw,* both of Port-
land (Joseph, Haney & Veatch and R. C. Bradshaw,
all of Portland, on the brief), for appellant.

*H. S. McCutchan,* of Portland (McCutchan & Mc-
Cutchan, of Portland, on the brief), for respondents.

BELT, J.  This is an action for money had and re-
ceived.  In 1924 the defendant Meier & Frank Company
sold to Ross Enyart and Bessie L. Enyart, under a
conditional sales contract, certain furniture and fix-
tures amounting to $23,959.88.  This property was to
be used in a hotel which the purchasers had leased from

Herman Winters and D. E. Steele. $4,200 was paid upon execution of the contract, the balance of the purchase price being payable in monthly installments of $400. Time was made the essence of the contract. The Enyarts operated the hotel until 1927 when they sold and assigned their interests in the lease and the contract to the plaintiffs. The plaintiffs continued to operate the hotel but were unable to pay the rentals, the amount due the Enyarts, or the installments under the conditional sales contract. The Enyarts, who were still liable under the lease and the conditional sales contract, caused a receiver to be appointed on June 28, 1930. Such officer remained in possession of the property until July 17, 1930, when the receivership was terminated for the reason that the order of appointment was void.

Considering the plaintiffs in default, the Meier & Frank Company elected to declare a forfeiture and resold the furniture and fixtures in question to Winters and Steele, the owners of the hotel property.

Plaintiffs introduced evidence tending to show that the sale to Winters and Steele was made on July 16, 1930, the day before the dismissal of the receiver and before Meier & Frank Company had repossessed the furniture. The defendant contended that the sale was made after the dismissal of the receiver and after it had repossessed the furniture. Such issue was submitted to the jury.

Payments made under the conditional sales contract amounted, principal and interest, to $19,342.42. The monthly payments, however, were not made at the times specified in the contract. The defendant followed a liberal credit policy and did not insist upon strict performance as to time of payments.

It is contended by plaintiffs that, since the defendant failed to give reasonable notice of its intention to insist upon compliance with the time essence clause of the contract and resold the furniture to Winters and Steele before having a right to declare a forfeiture, they may treat the contract as mutually rescinded and recover the amount paid thereunder.

Defendant denied any breach of the contract but also relied upon the alternative plea that, if it be adjudged that the contract was mutually rescinded, the defendant should be allowed, as an offset against the demand of plaintiffs, the reasonable annual rental value and depreciation of the personal property in question during the time it was in the possession of plaintiffs and their assignors. It is alleged that the reasonable annual rental value and depreciation of the furniture and fixtures is equivalent to 15 per cent of the cost thereof.

The cause was submitted to a jury and a verdict returned in favor of plaintiffs for $10,142.42. Defendant appeals.

■ It is urged by appellant that it was entitled to a directed verdict since the undisputed testimony shows that the reasonable rental value and depreciation of the property during the time it was in the possession of the plaintiffs and the Enyarts exceeds the amount of the payments.

Exception was taken to the following instruction:

"If you find plaintiffs are entitled to recover under the evidence and instructions the court has given you, then you may credit against any amount that you may find the plaintiff to be entitled to, the reasonable value, *if any,* of the use of the furniture, while in the possession of plaintiffs and their predecessors, Enyarts;"

The sole objection to the above instruction pertains to the italicized words "if any". We agree with counsel for appellant that such words should have been eliminated, but the error was undoubtedly cured by the verdict of the jury. It appears affirmatively from the record that the jury did allow defendant credit for the reasonable rental and depreciation of the furniture. If the jury had not allowed *any* such credit, the defendant would be in a position to complain.

██ The jury was not bound to accept as conclusive the uncontradicted opinion of the witnesses on behalf of defendant that the reasonable value of the use and depreciation of the furniture was equal to 15 per cent per annum of the cost thereof. The probative weight to be accorded to the estimates of witnesses as to rental value and depreciation was a matter entirely for the jury. The jury should take into consideration the opinion of such witnesses together with all the other facts and circumstances of the case and accord to it such weight as sound judgment dictates: 22 C. J. 595; 11 R. C. L. 637. Opinion evidence is advisory but not conclusive: *Littlepage v. Security Savings & Trust Co.*, 137 Or. 559 (3 P. (2d) 752), and authorities therein cited. Also see *Officer v. Cummings,* 127 Or. 320 (272 P. 273).

█ Error is assigned because the court, over the objection of defendant, admitted in evidence the original ledger sheets showing the Enyart-Paine account with Meier & Frank Company and excluded from consideration of the jury certain notations made on the back of such ledger sheets relative to the account. There was no real controversy relative to the amount of the payments nor the dates upon which the same were made. It is clearly disclosed from an examination of the matter on the back of the ledger cards that it was not rele-

vant nor material to any issue in the case. The exclusion of such matter certainly did not operate to the prejudice of the defendant. The notations on the back of the cards did not explain nor modify any of the entries in reference to the account. Some of these notations pertained to telephone conversations had by clerks of the defendant with some third person and would, of course, be purely hearsay and not binding on the plaintiff. There is nothing on the back of the ledger cards which would indicate an intention to declare a forfeiture or reinstate the time essence clause of the contract. Furthermore, the offer in evidence by defendant of the matter on the back of the cards was general and not limited to any particular part thereof. Certainly some of the hearsay statements and self-serving declarations written on these cards were inadmissible. Under this state of the record, the court, without doubt was right in rejecting the entire offer.

As stated in *Samuels v. Mack-International Motor Truck Corporation,* 128 Or. 600 (275 P. 596):

"It is settled in this jurisdiction that if the conditional vendor wrongfully rescinds the contract of purchase, the buyer may elect to assent to such rescission and recover payments made in action for money had and received: Massey v. Becker, 90 Or. 461 (176 P. 425) and cases therein cited. A wrongful rescission was had if the defendant, after having waived strict performance of the contract as to payments, declared a forfeiture and repossessed the trucks without giving the plaintiff definite and reasonable notice that unless amount due on contract was paid it would so act. A waiver is the relinquishment of a known right and may be established expressly or by implication. The right to declare a forfeiture for failure to comply strictly with the contract in making these monthly instalment payments is for the benefit of the seller and unquestionably may be waived by him."

Also see *Graham v. Merchant,* 43 Or. 294 (72 P. 1088); *Gray v. Pelton,* 67 Or. 239 (135 P. 755); *Burdick v. Tum-A-Lum Lumber Co.,* 91 Or. 417 (179 P. 245); *Epplett v. Empire Inv. Co., Inc.,* 99 Or. 533 (194 P. 461, 700); *Olson v. Pixler, et ux.,* 138 Or. 250 (6 P. (2d) 23). *Pacific Finance Corporation v. Ellithorpe,* 134 Or. 601 (280 P. 658, 289 P. 1058), is not in conflict with the rule above announced and the numerous authorities cited in support thereof. In the Pacific Finance Corporation case the contract contained the following provision:

"Time and each of its terms, covenants and conditions are hereby declared to be of the essence of this contract, and acceptance by the Seller of any payment hereunder after the same is due shall not constitute a waiver by him of this or any other provision of this contract, * * * and this contract may not be enlarged, modified or altered except by endorsement hereon, signed by the parties hereto."

█ It certainly would be within the province of the parties to stipulate that acceptance of delayed payments should not be considered as a waiver of strict performance of the time essence provision of the contract, but no such stipulation was contained in the contract in the instant case. This rule is recognized in Estrich on Instalment Sales, § 310, wherein it is stated:

"A provision that time is the essence of the contract is not waived by the acceptance of overdue instalments, especially where the contract so provides."

The request of the respondent that defendant be penalized for an alleged frivolous appeal is denied.

Finding no substantial error in the record it follows that the judgment is affirmed.

ROSSMAN, J. (dissenting). The pleadings of the plaintiffs aver: "At no time did defendant inform plaintiffs or either of them that they would be held to the strict terms of said conditional sales contract or that defendant would elect to repossess the said personal property or terminate the said contract, and defendant repeatedly informed plaintiffs that defendant would be satisfied with and would accept payments from time to time as plaintiffs might be able to make them, and lulled these plaintiffs into the belief that defendant had no intention of enforcing the strict terms of the said conditional sales contract * * *. That notwithstanding the defendant had continued to accept payments from plaintiffs when overdue without objection, suddenly, without warning or notice of their intention so to do, and without giving plaintiffs a reasonable or any opportunity to complete the payments before so doing, and without repossessing the said furniture, and at a time when the said property was in the possession of J. C. Martindale, acting as receiver * * * defendant, in utter disregard of the rights of these plaintiffs, sold the personal property * * *. The defendant at no time notified these plaintiffs or either of them that it had any intention or desire to enforce the strict performance of the terms or the conditions of said contract, or that it would not continue to accept the payments of these plaintiffs from time to time as they could make the same, and these plaintiffs were not given any reasonable time before sale by the defendants in which to pay the balance due upon the said contract, and on the contrary, through their officers and agents, one Lloyd Frank and certain employees of its credit department, whose names are to plaintiffs unknown, lulled these plaintiffs into the belief that the strict terms of said contract would not be en-

forced * * * and that these plaintiffs should be permitted to have an extension of time for the payment of the balance of the said purchase price. That had plaintiffs been advised of any intention of the said defendant not to continue to waive the strict terms of the performance of said contract, or that defendant would attempt to exercise any rights of forfeiture for failure to make payments punctually as required by the times and conditions of said contract, these plaintiffs would have procured the funds with which to make said payments. * * *'' For proof of these averments the plaintiffs relied largely upon a number of entries appearing upon the face of the credit-debit cards mentioned in the majority opinion which showed that the plaintiffs made payments in varying amounts at irregular intervals. Upon the reverse side of these cards is a series of entries which the defendant contends explains or lends color to the entries upon the face of the cards. Some of the entries are clearly of that character and indicate that they were made in the regular course of duty by the credit department. For instance, on August 16, 1927, the account was credited with a payment of $25. Upon the reverse side of the card is recorded: ''8-16-27 Hoover office turned in $25.00 chk. payable to J. Bradlaw, indorsed to us. W.'' Some record the efforts of the defendant's credit department to persuade the plaintiffs to make payments. Upon the back of the card which records the debits and credits for the year 1929 appear the following entries:

''5-11-29 Phoned him—will mail chk for April payment today and May payment later part of next wk. C. R. 6-22-29 Phoned Paine—will bring up to date on July 1st—has money due him from loggers, etc., which he expects to collect by 7-1-29. CR. 7-13-29 letter asking him to bring up to date CRKG.''

The entries vary in nature but several are of substantially the same character as those just quoted. All these reverse-side entries were excluded from the consideration of the jury. J. A. Albrich, credit manager of the defendant, as a witness for the plaintiffs, vouched for the authenticity of the entries upon the face and reverse side of these cards. The following is virtually the only testimony which he gave upon this subject: "This is the ledger record of the account entered into between Ross Enyart and Bessie Enyart for the purchase of furniture, and later assigned by them to Elmer D. Paine and Laura B. Paine. This is a complete record of the charges for interest and payments on the merchandise—and merchandise returned; a complete record of everything in connection with the account." The plaintiff Elmer D. Paine, in substantiation of his contention that the defendant, without protest, accepted whatever the plaintiffs paid and never asked for more, testified: "Well, I went up to Meier & Frank's with Enyart, when I was negotiating to buy the hotel, and I talked to a Mr. Roberts, one of the credit men that handled the contract, and he showed me the contract. I noticed it called for payments of $400 a month and interest; I told Mr. Roberts that was too steep a payment for me to make and he ratified that verbally—he said, 'You don't have to keep that amount up. It has not been kept up under that contract'." This testimony was received, although the witness, upon becoming assignee of the conditional sales contract, attached his signature to a writing from which the following is quoted: "I hereby covenant and agree to accept said contract subject to all the terms, covenants and conditions mentioned therein." Clearly, the parol evidence rule protected the instrument just mentioned from this testimony whereby the witness sought to render it a nullity. No objection was made

to this testimony but nevertheless the incident becomes one of importance when we consider the court's action in excluding the entries upon the reverse side of these debit-credit cards.

I know of no reason why these entries were not admissible in evidence. Very likely the entries appearing upon the face of these cards, showing payments in various amounts made at irregular intervals, convinced the jury that the plaintiffs' pleadings recited the truth. The jury perhaps drew the conclusion that the defendant accepted these payments without objection and without any promise from the plaintiffs to eventually adhere to the terms of the conditional sales contract. It, therefore, reasoned that the repeated breaches, which occurred through the plaintiffs' failure to pay the monthly installments of $400, were waived by acceptance of the partial payments. But had the jury been permitted to look at the other side of these cards, it would have seen that upon the same day when the defendant was accepting a smaller sum than the amount due the plaintiffs were making the assurances recorded upon the cards. Let us bear in mind the fact that the authenticity of the entries upon the reverse side of the cards was proved by the same witness who vouched for those upon the face of the cards and in the selfsame words. All of these entries were made in the regular course of business. Wigmore on Evidence (2d Ed.) § 1521. If the fact that some of them are self-serving excludes them, then virtually all entries made in the course of business, and practically all account books, would be excluded from the court room. Such is not the law. Section 9-210, Oregon Code 1930, provides:

"When part of an act, declaration, conversation, or writing is given in evidence by one party, the whole, on the same subject, may be inquired into by the other

\* \* \* and when a detached act, declaration, conversation, or writing is given in evidence, any other act, declaration, conversation, or writing which is necessary to make it understood may also be given in evidence.''

The objection which was for the first time voiced upon reargument of the cause in this court, that a part of the entries upon the reverse side are of matters immaterial to this cause, can not sustain the opinion of the majority. It was the plaintiffs, and not the defendant, whose offer obtained the introduction of the face of the cards and excluded the reverse. The above objection was not made in the circuit court and is not even mentioned in the briefs. The immaterial matters could not have been prejudicial to the plaintiffs had the entries been received in evidence, and, without doubt, would have been excluded by the court if attention had been directed to their nature.

But let us assume that the entries under consideration were not admissible in evidence. If the record, as it is, shows that the plaintiffs were in default July 17, 1930, when the defendant resold the merchandise to Winters and Steele (while the receivership was in effect), surely the plaintiffs are not entitled to a judgment against the defendant. Let us, therefore, inspect the account. The aforementioned debit-credit sheets show that December 24, 1929, the plaintiffs paid on account $500; February 1, 1930, they paid on account $50.90, and May 6, 1930, $250. The latter is the last payment which they made and the above are the only payments which they made since September 6, 1929. Thus, it is evident that although the contract which they had assumed required payments of $400 June 1, 1930, and July 1, 1930, these payments were not made. The jury possibly would have been warranted in believing that the plaintiffs' default on December 1 was waived by the defendant when, on the 24th of that

month, it accepted the $500 payment and that further waivers occurred on February 1 and May 6. But on June 1 and July 1 nothing whatever except a breach occurred. No payments were made, no conferences were held, and nothing developed from which one could infer a waiver of the defaults which occurred upon these days. Why then cannot the defendant avail itself of those two defaults? From Estrich, Installment Sales, p. 626, I quote:

"Obviously the acceptance by the conditional seller of a number of payments less than the amount specified in the contract does not amount to a waiver of his right to enforce the contract upon a further breach by the refusal or failure to make any further payment on account of the purchase price."

The textbook just mentioned cites *Burrier v. Cunningham Piano Co.,* 135 Md. 135 (108 Atl. 492), in which the circumstances disclosed by the evidence were not substantially different from those before us. In disposing of a contention similar to the one presented by the plaintffs, the court said:

"The acceptance by the plaintiff of a number of payments which were less than the amount specified in the contract did not amount to a waiver of its right to enforce the contract upon a further breach by the refusal or failure of the defendant to make any further payment on account of the purchase price."

Applying this principle of law, it is evident that the plaintiffs are not entitled to retain the judgment which they now possess. The "taking" of this merchandise by the defendant on July 17, 1930, was at best a technical one. Plaintiffs rely upon that technical taking as the foundation of their claim. But their breaches of their contract on June 1 and July 1, 1930, were real and, in my opinion, preclude any recovery in this action. I, therefore, dissent.

RAND, C. J., concurs in this dissenting opinion.

Petition for rehearing denied February 13, 1934

On Petition for Rehearing
(29 P. (2d) 531)

BELT, J. In the brief of counsel for the defendant-appellant there were three assignments of error, to-wit:

(1) The court erred in allowing the plaintiffs, over the objection of the defendant, to introduce in evidence the defendant's ledger cards and in excluding certain matter written on the backs thereof.

(2) The court erred in refusing to give certain instructions requested by defendant.

(3) The court erred in giving certain instructions. These assignments were all considered in the original opinion and decided adversely to appellant.

10. In the brief supporting the petition for rehearing there are two additional assignments, viz:

(1) "The Court erred in failing to hold that the plaintiff could not recover for the reason that there was no evidence that plaintiff was able or willing to make the payments due on the contract, or ever offered to do so, as shown by the undisputed testimony in the case."

(2) "The court erred in holding that the acceptance of a lesser payment than due, or at a different time than specified in the contract, would eliminate the time essence clause from the contract and require a notice to reinstate such clause."

Since the last two contentions are presented here for the first time, we may well consider the same to have been waived. However, since it is urged that the law as declared on original hearing is of vital interest to vendors who sell under conditional sales contracts, we shall again consider the question of waiver of the

time essence clause and the right of vendors to declare a forfeiture.

There is no desire to penalize a vendor who is lenient and pursues a liberal credit policy. Neither do courts look with favor upon forfeitures. In the instant case, principal and interest amounting to $19,342.42 was paid on a purchase price of $23,959.99. $4,200 was paid upon the execution of the contract. The balance of the purchase price was to be paid in monthly installments of $400 each. Sixty-seven payments were made over a course of years, none of which, in amount or in time of payment, were in keeping with the terms of the contract. In view of this course of dealing, it is quite reasonable to assume that the vendee was lulled into the belief that the time essence clause was waived and that his interest in the contract would not be forfeited without notice of an intention so to do. Having waived the right of forfeiture by reason of past delinquent payments, it does not follow that such right of forfeiture may not be exercised upon default in future payments, but, before the vendor can reinstate or restore the forfeiture clause once waived, it is incumbent upon him to give reasonable and definite notice of such intention. There is no evidence in the record of any such notice. The rule thus declared works no hardship on the vendor and it is just to the vendee. It is needless to cite additional authorities. Those referred to in the original opinion are deemed sufficient.

No exceptions were taken to the instructions of the court relative to the alleged waiver of the time essence clause. Indeed, counsel for appellant recognized the rule of law declared in the original opinion by requesting the court to give the following instruction:

"If you find from the evidence that the Meier & Frank Company, prior to the sale of the furniture to

Winters and Steele, gave the plaintiffs notice that unless the plaintiffs paid the delinquent installments due under said contract, the furniture would be repossessed, then your verdict must be for the defendant.''

No good purpose would be served by reiterating our views concerning the admissibility of the matter contained on the backs of the ledger cards, which was excluded by the trial court.

The petition for rehearing is denied.

———

ROSSMAN, J. (dissenting). The majority emphasize the fact that the purchasers paid $19,342.42, principal and interest, upon their purchase contract which required them to make a payment of $23,959.99 principal money. The article purchased was not real property which never wears out, which is always available for resale and which may increase in value, but was hotel furnishings which common observation teaches us is subject to rapid deterioration in value and condition as the result of usage and style change. The defendant's ledger cards indicate that the defendant suffered a loss of $420.28 after the account was credited with all payments made by the plaintiffs and those to whom the defendant later sold the furnishings. One cannot with safety universally apply the law governing the sale of real property to the sale of personal property.

The majority state that the indulgence of the vendor effected a waiver of the time essence clause of the contract. They believe that the vendor's indulgence rewrote the contract, substituting for the old instrument a new one devoid of that clause. The decisions of this court cited in the majority's first opinion con-

tain an occasional statement in harmony with their present pronouncement, but those statements were not essential to the disposition of the cause. In addition to the authorities cited in the previous dissenting opinion holding that a waiver of a past default does not affect future defaults, I add the following: *Lent v. B. & M. R. R. Co.,* 11 Neb. 201 (8 N. W. 431); *Boone v. Templeman,* 158 Cal. 290 (110 P. 947, 139 Am. St. Rep. 126); *Cash v. Meisenheimer,* 53 Wash. 576 (102 P. 429); *De Bairos v. Barlin,* 46 Cal. App. 665 (190 P. 188); *Keefe v. Fairfield,* 184 Mass. 334 (68 N. E. 343); *Hill v. Townsend,* 69 Ala. 286; *Phelps v. Ill. Cent. R. R. Co.,* 63 Ill. 468; *Spellman v. Dundalk Co.,* 164 Md. 465 (165 Atl. 192). The following is quoted from *Lent v. B. & M. R. R. Co.,* supra:

"No one would contend of course that, as to the installments received, there was not a waiver; but the argument of counsel goes further, and amounts to this, that the acceptance of payments overdue is a waiver of the matter of time, not only as to them, but also as to those falling due thereafter. Such, however, is not the law. The proposition is supported by neither reason nor authority. The simple act of receiving a payment after the day when the payee was bound to accept it, without more, is no excuse for laches as to future payments. The effect of the acceptance is exhausted upon the payment made, and as to those following, the provisions of the contract are left to operate with unimpaired force."

In *Boone v. Templeman,* supra, the court, after apparently having made an exhaustive examination of the authorities, stated their trend thus:

"We find none that goes so far as to hold that the mere acceptance of one payment after its maturity will waive the right to declare a forfeiture if default occurs in subsequent installments."

In *De Barios v. Barlin,* supra, the court declared:

"Acceptance of overdue installments of the price, on an executory contract for the sale of land, waives any right to declare a forfeiture on account of the previous failures to pay when due. But such acceptance alone does not change the terms of the contract as to forfeiture for future failures, nor eliminate the provision that time is of the essence of the contract."

It is unnecessary to quote further from the decisions. Their language and holdings are similar to the above. The above principle which holds that a waiver of a present or past breach leaves untouched future breaches is no stranger to our reports. For instance, in *Coquille M. & T. Co. v. Dollar Co.,* 132 Or. 453 (285 P. 244), we cited 13 C. J., Contracts, sec. 632, p. 607, and Page on Contracts, sec. 3044, in support of our conclusion that generally the fact that a party does not take advantage of a present breach by declaring the contract terminated does not prevent him from availing himself of a subsequent breach. See also *Maffet v. Oregon & California R. R. Co.,* 46 Or. 443 (80 P. 489), and *Gray v. Pelton,* 67 Or. 239 (135 P. 755).

I am not unmindful of the rule which prevents a promisee from declaring a contract forfeited on account of the promisor's departure from the contract's covenants which he (the promisee) induced the promisor to so conduct himself. Williston on Contracts, Sec. 741, states this rule thus:

"On the other hand, it should be observed that if a promisor has by his conduct of whatever kind justified the promisee in believing that the promise will be kept in spite of failure of the promisee to fulfill a condition, and relying thereon the promisee fails to fulfil it, performance of the condition is excused. And continued acceptance of a series of defective performances, especially if they are all defective in the same respect, may justify belief not only that performance of that character has been satisfactory to the promisor in the

past but that it will be satisfactory as a performance of future conditions. Thus, where the exact time of performance is made of the essence by the contract between the parties, continued acceptance of late performance without objection, operates as a permission to make similar late performance in the future.''

The basis of the rule, as is evident not only from Professor Williston's language but also from *Phillips Sheet & Tin Plate Co. v. Boyer,* 133 Md. 119 (105 Atl. 166), and *Moore v. General Accident Ins. Co.* 173 N. C. 532 (92 S. E. 362), cited by him, is estoppel. In the controversy before us the plaintiffs nowhere, except in their pleadings, claim that the indulgence of the defendant in any way misled them. They made no such claim upon the witness stand, and their counsel makes no such contention in his brief. The plaintiffs nowhere testified that this indulgence caused them to refrain from making their payments punctually, to divert their money to other expenditures, nor to alter their conduct in any detail. Let us remind ourselves that an estoppel consists not alone of a representation but also of an altered position induced by the representation. It arises where one, who had a right to rely upon the representations of another against whom he now seeks to invoke it, altered his conduct to such an extent (in reliance upon the representations) that it would be inequitable to permit the representor to depart from his representation. A careful reading of the transcript of evidence fails to disclose that the plaintiffs were in any manner influenced by the defendant's indulgence. To the contrary, the record conclusively indicates that the plaintiffs were constantly straining their resources to the utmost to meet the demands of the defendant, their landlord and their other creditors. One of the plaintiffs freely admitted that the defendant ''asked me for payments; they had always sent me statements''. The plaintiffs' landlord, in uncontradicted testimony, testi-

fied that his persistent demands for rent money at times brought him checks which, upon presentment, were dishonored. The plaintiffs themselves described their financial obligations as being burdensome, and were especially disposed to consider the large rent exactions as oppressive. They sought to solve their financial difficulties by endeavoring to persuade their landlord to purchase the defendant's contract. After these efforts had failed and six months' rent remained unpaid the landlord procured the appointment of a receiver for the hotel. The plaintiffs then turned to the defendant and endeavored to persuade its officials to induce the landlord to dismiss the receivership suit. While the receiver was in possession the defendant committed the act upon which the plaintiffs rely as the foundation of this action. It must be apparent from the foregoing that the plaintiffs were not misled by the defendant's indulgent credit policy, and did not alter their course in any detail as a result of anything the defendant did. It will not do to say that as a result of the defendant's generous policy the plaintiffs continued to make payments, because it was the plaintiffs' contractual duty to pay. An estoppel cannot be predicated upon such a duty. It is evident that the judgment of the circuit court cannot be sustained unless the defendant's indulgence, accompanied, as we have seen, by constant demands for payment, rewrote the parties' contract in such a way that both a demand and a further extension of time were necessary. The instructions given by the trial judge to the jury stated that acceptance of an overdue payment effected a waiver of the defendant's right to declare a forfeiture, and submitted to the jury virtually no issue except the amount of damages.

I know of no principle of law which sustains the judgment, and, therefore, dissent.