Argued June 8; affirmed September 28, 1943; rehearing denied
January 25, 1944

## ALLISON *v.* DAVIDSON ET AL.
### (141 P. (2d) 530)

Before BAILEY, Chief Justice, and BELT, ROSSMAN, KELLY, LUSK, BRAND, and HAY, Associate Justices.

*Ralph R. Bailey,* of Portland (Maguire, Shields, Morrison & Biggs, of Portland, and Custer E. Ross, of Salem, on the brief) for appellants.

*Wallace P. Carson* and *Ralph W. Skopil,* both of Salem (Carson & Carson, of Salem, on the brief) for respondent.

KELLY, J.  On December 8, 1940, plaintiff and two of his companions, William Hill and John Cobell, purchased a 1930 Model A Ford used automobile, and, upon driving it from Salem to Chemawa, it started "smoking back-firing and missing." Upon their re-

turn to Salem, they took the automobile to defendants' garage, wherein defendants operated a repair shop.

After entering the garage, plaintiff and Cobell got out of the car and Hill remained in it. Mr. Earl J. Nixon, a mechanic employed by defendants, was assigned by one of the defendants to the task of determining what had caused the trouble. The right side of the hood was raised. The record does not disclose who raised it. Nixon requested Hill to accelerate the motor which Hill did. Upon a second request by Nixon, Hill again accelerated the motor. The record is conflicting as to whether at any time after the car entered the garage the motor stopped running until the accident occurred, but it is clear that during most, if not all, of that time, the motor was idling, except at the times just mentioned when Hill accelerated it at the request of defendants' mechanic.

Following the second acceleration, Hill got out of the car and joined Allison, who was standing in the rear of the repair shop. An interval passed while Mr. Nixon examined the motor and then he called plaintiff and Hill over to the car. They came to the car and plaintiff stood by the right fender facing the motor. Nixon pointed toward the water pump directly behind the fan and told plaintiff to look. Plaintiff testified that Nixon pointed toward the front of the motor and said: "Here is your trouble." As plaintiff was looking, and the testimony of Hill is to the effect that plaintiff had to bend over to look where Nixon was pointing, Nixon accelerated the motor, a blade of the fan flew off and struck plaintiff in the face cutting a gash through his nose, fracturing his upper and lower jaws, causing the loss of several teeth and the severance longitudinally of his tongue for about one half of its length.

Errors are assigned in the refusal of the trial court to grant an involuntary nonsuit, direct a verdict for the defendants or enter judgment for defendants notwithstanding the verdict; in failing to give one instruction requested by defendants, in giving an instruction requested by plaintiff, and in using a phrase in its instructions which defendants assert was unwarranted and prejudicial.

■ In considering the question whether an order of nonsuit, one directing a verdict for the defendants, or rendering a judgment for defendants, notwithstanding the verdict, should have been made, we must bear in mind that—

"The question of negligence must be submitted to the jury as one of fact, not only where there is a conflict in the evidence with relation to the existence of the facts from which it is proposed to infer negligence, but also where there is room for difference of opinion between reasonable men as to the inferences which might fairly be drawn from conceded facts." Vol. 1, Shearman & Redfield on Negligence (Revised Edition by Clarence S. Zipp) Section 42, p. 111.

■ We have the verdict of the jury which can bear no other construction that that the required number of jurors was of the opinion that defendants were negligent, or, to state it more exactly, that defendants' mechanic was negligent and under the law his negligence was imputable to defendants.

In coming to this conclusion, unquestionably the jury had in mind not only the course taken by defendants' mechanic, Mr. Nixon, but the fact that the automobile in suit was an old one and obviously outworn. This court also bases its conclusion with respect to whether there is substantial evidence tending to show

that Nixon was negligent upon that fact as well as the other facts that the testimony tends to support.

Mr. Francis W. Smith, chief boiler inspector for the State of Oregon, as a witness for plaintiff, testified on his direct examination, in answer to the following question, as follows:

"Q. Would it be safe practice for an automobile mechanic to direct or permit, or both, the customer or any other person to stand in line with blades of the fan and then to cause the motor to be raced with the hood up so that the blades could fly out into the air outside the car?

"A. Well, I will say that is not a safe practice."

On redirect examination, Mr. Smith testified in answer to the following question, as follows:

"Q. * * * State whether or not, in your opinion and assuming the following to be proved facts in the case, that a mechanic—the hood of a car or Ford Model A car is up; the motor is running; the mechanic points to the customer—points down into the front or toward the front part of the motor and says, 'There is your trouble', and then the customer wanders to that place, stands, bends over and gets his face in proximity to the fan, and then the mechanic causes the motor to be highly accelerated or raced. Now, state whether or not that is the exercise of reasonable care on the part of the mechanic? Whether he is exercising due care in doing it.

"A. No, he is not. No. I see what you are getting at now."

Mr. Harris Lietz, as a witness for plaintiff, testified that he had had twenty-two years' experience in the repair of automobiles and for about sixteen years had been in charge of the repair work in the Valley Motor Company's shop in Salem.

After having stated that he had warned customers a great many times not to stand in front of the fan and on the other hand there were probably times when he had not warned them, Mr. Lietz was asked the following questions and gave the following answers:

"Q. Well, we will forget those lapses, because you are not on trial, but state then whether it would be, in your opinion, the exercise of reasonable care for the mechanic to direct the customer—now, I am not speaking where the customer volunteers to do that, but for him to assume a situation where he says: 'Well, here is your trouble down here', and he points downward into the forward part of the motor, and the customer gets over and gets in front of the fan, and at the same time the mechanic to get hold of the rod of the carburator and give it 'the gun' so to speak, and race it. Would you call that the exercise of due care? Assuming that occurred?

"A. Assuming that occurred, I would say that was not the exercise of due care. I don't think he would be deliberately subjecting the customer to danger, but it is probably one of those situations where something happened that is just too bad.

"Q. Well, it wouldn't—you would say it wasn't the exercise of due care?

"A. No. No, I would say there was no care exercised; just passed up."

We are unable to say that there is no substantial evidence of negligence on the part of defendants' mechanic. Based upon the testimony of Mr. Smith and Mr. Lietz, the jury was warranted in finding that it was not approved practice in motor vehicle repair shops in this locality for the defendants' mechanic to accelerate the motor after inviting plaintiff to approach the automobile; and while plaintiff was in close proximity to and in line with the motion of the cooling fan without first giving plaintiff notice or warning of

the mechanic's intention to accelerate it, or by some other means affording plaintiff notice and warning of the danger to plaintiff of such an operation.

Summoning plaintiff to the automobile, asking him to look at the front of the motor, failing to caution him not to place himself in proximity to the cooling fan and, without any notice to plaintiff of his intention to do so, accelerating the motor when plaintiff was in such close proximity, are all supported by the record as the course taken by defendants' mechanic.

As shown by the answer of Mr. Lietz, last above quoted, and in the testimony of Mr. Smith, in the opinion of experienced mechanics, there was an absence of due care which is another name for negligence on the part of defendants' mechanic.

The testimony of these experts, to which reference has been made, was received without objection. We cannot say that it was lacking in evidentiary value.

On cross-examination, Mr. Virgil Gearhart, assistant shop foreman of the Valley Motor Company, of Salem, who was called as a witness in behalf of defendants, testified as follows:

"Q. You don't mean to tell this jury that you say it is a safe practice in demonstrating any part there to have a customer get his face down near the fan and race the motor in an old jalopy?

"A. No, I wouldn't say it is safe.

"Q. Would you say as a general practice it is unsafe?

"A. Yes, if you want to put it that way, I would say it is unsafe. The motor block might blow up. We have had them break.

"Q. Yes, it is unsafe in an old jalopy. Anything might happen to the mechanical part of that.

"A. Yes, it might happen. Anything could happen to one of them.

"Q. You could expect anything, couldn't you?

"A. Very few things can't happen to them.
* * * *"

Mr. Gearhart also answered the following question as follows:

"Q. * * * * You won't say here to these ladies and gentlemen of the jury that it is a safe practice to have a person at right angles to the axis of a fan in an old jalopy, and with his face near that, and speed the motor up.

"A. No, I wouldn't say it was safe."

Further on in his cross-examination Mr. Gearhart said:

"Of course, it isn't good practice to stand in front of any moving object."

He was then further cross-examined as follows:

"Q. You don't recommend that to the customers of the Valley Motor Company, to stand in front of any moving part?

"A. No, we don't.

"Q. And you wouldn't think it is the exercise of due care to do that?

"A. No, we try to keep everybody safe."

From the foregoing excerpt of Mr. Gearhart's testimony, it is obvious that distinction was clearly made from the witness stand between an old outworn automobile and a comparatively new one with respect to the question at issue here.

▆▆▆ Error is assigned in the giving of the following instruction to the jury:

"Although the operator of a public garage and repair shop is not the insurer of the safety of a customer therein, he owed to such customer the duty of exercising reasonable or ordinary care for his safety, and is liable for injury resulting from a

breach of such duty. In this case it is for you to determine whether or not defendants breached such duty in any of the particulars charged in the complaint, and, if so, whether or not such breach proximately caused plaintiff's injuries.''

It is argued that the above quoted excerpt from the court's instruction was an abstract statement of law which had no reference to any issue of fact capable of submission to the jury under the pleadings and evidence in the case. It is also urged that it was misleading and took from the jury a specification essential to the determination of negligence under the circumstances in the case in that it failed to state that the test of reasonable or ordinary care in this case involved a determination by the jury of whether the appellants knew or should have known that the cooling fan or some other part of the car was apt to break at any time, and, more particularly, whether appellants knew or should have known that the cooling fan blade which broke was partially broken through at the time the car was driven into the appellants' garage for repairs.

It would have been improper for the trial court to incorporate in its instructions an assumption that the cooling fan blade, which struck plaintiff, was partially broken through at the time the car was driven into defendants' garage for repairs. There was evidence introduced by defendants to that effect, but the blade itself was not produced. There was also evidence to the effect that moving parts, such as the blade of a cooling fan, crystallize to the breaking point. The jury were the exclusive judges of the question whether the blade had been partially broken or had merely crystallized to the breaking point.

In construing the instruction under consideration, *it must be examined together with the other parts of*

the court's instruction upon the same phase of the case. To this end, we quote the entire paragraph of which the instruction under consideration is a part.

"When an act or action is negligent, it is not necessary to render it the proximate cause that the person could or might have foreseen the particular consequence or precise form of the injury, or the particular manner in which it occurred, if, by the exercise of reasonable care it might have been foreseen or anticipated that some injury might result. It is sufficient that the consequence attributed to the negligent act or omission was the natural and probable result thereof, although it might not have been specifically contemplated or anticipated. Although the operator of a public garage and repair shop is not the insurer of the safety of a customer therein, he owes to such customer the duty of exercising reasonable or ordinary care for his safety, and is liable for injury resulting from a breach of such duty. In this case it is for you to determine whether or not defendants breached such duty in any of the particulars charged in the complaint, and, if so, whether or not such breach approximately [proximately] caused plaintiff's injuries. An injury that is a natural and probable consequence of an act of negligence is actionable, and such an act is the proximate cause of the injury, but an injury which could not have been foreseen nor reasonably anticipated as the probable result of an act of negligence is not actionable, and such an act is either the remote cause or no cause whatever of the injury. An injury that results from an act of negligence, but that could not have been foreseen or reasonably anticipated as its probable consequence, and that would not have resulted from it, had not the interposition of some new and independent cause interrupted the natural sequence of events, turned aside their course, and produced it, is not actionable. Such an act of negligence is the remote and an independent intervening cause is the proxi-

mate cause of the injury. It is not enough to prove that the accident is the natural consequence of the negligence; it must also have been the probable consequence. A natural consequence of an act is the consequence which ordinarly follows it; the result which may be reasonably anticipated from it. A probable consequence is one that is more likely to follow a supposed cause than it is to fail to follow it.''

A short paragraph of less than seven typewritten lines follows the last quoted portion of the instructions and this is followed by—

''If it shall appear to you from the evidence that the detaching of the fan blade was a thing that could not have been foreseen or reasonably anticipated by defendants' employee, then your verdict will be for the defendants. It is not sufficient that it be established that the detaching of the blade while the motor and fan were in operation was the natural result of such operation. Plaintiff must prove to you by a preponderance of the evidence that the detaching of the blade under such circumstances was the probable consequence of such operation of the motor and fan. A probable consequence is one that is more likely to follow the supposed cause than it is to fail to follow it.''

No error was committed in giving the instruction first hereinabove quoted in connection with the other instructions given.

■ Error is also assigned upon the following phrase used by the court in its instructions while stating the issues as disclosed by the complaint of plaintiff and defendants' answer:

''Opportunity for which observation has been afforded by defendants, or some one elses (identity to plaintiff unknown) theretofore having raised the

hood or covering over said motor, so that it was exposed and open to view.''

This is the language of plaintiff's complaint as amended by interlineation at the close of plaintiff's case in chief; and, in the instruction of the court, it, together with the remainder of plaintiff's allegations of negligence, was used to advise the jury of plaintiff's charge of negligence against defendants. The denial of negligence by defendants, as set forth in their answer, was stated in the trial court's instructions. The phrase in question simply means that the hood or covering over the motor theretofore had been raised by some one whose identity is unknown, thereby exposing the motor to view. Admittedly such a course had been taken. No error was committed by the trial court in using the criticized phrase above quoted.

■ The trial court defined negligence as follows:

''Negligence in this case would be the failure to do that which a reasonably prudent person would have done under the circumstances, or the doing of something which a reasonably prudent person would not have done under the circumstances.''

Defendants requested the court to define negligence thus:

''Negligence may be defined as the failure to do that which a reasonably prudent person, guided by those considerations which ordinarily regulate the conduct of human affairs, would have done under the circumstances, or the doing of something, which under the circumstances, a reasonably prudent person would not have done.''

It is not clear to the writer why guidance ''by those considerations which ordinarily regulate the conduct of human affairs'' is essential in determining whether

a failure or omission to do something constituted negligence, while in giving consideration to the question whether an act of commission is negligent no such guidance need be invoked. The deletion of the phrase just quoted from defendants' requested instruction was not reversible error.

The judgment of the circuit court is affirmed.

---

LUSK, J. (specially concurring). I concur in the judgment of affirmance, but solely for the reason that the automobile was old and in obviously bad condition. Familiarity with the mechanism of automobiles has, perhaps, bred contempt for their dangerous potentialities; but, be that as it may, it is a matter of common knowledge that garage patrons, with the acquiescence of mechanics, stand by and look on while an examination is made for defects which may be only discoverable when the motor is operating, and that neither the mechanic nor the patron exhibits fear that the fan will fly to pieces. If this were the case of a new automobile or one in ordinarily good mechanical condition, the question would be an entirely different one than that actually presented by the evidence; and I should think that we would then be justified in rejecting as unreasonable expert testimony that as to any and every automobile it would be negligence to fail to warn a person not to stand in line with the cooling fan while the motor is operating. But it could reasonably be held that when the mechanic knew, as he himself testified, that the motor itself was in very bad condition and the car had obviously not been cared for, it should have occurred to him that other parts of the mechanism might be worn and defective, and that ordinary caution should have suggested to him the duty not to expose

the plaintiff to the risk of injury from the only unguarded, moving part of the machine. At least, when an experienced mechanic called as a witness by the defendant, concedes that with respect to an "old jalopy" such as this case involves, it would be negligence to accelerate the motor and speed up the fan while the plaintiff was close to, and in line with, it, I think it difficult to hold that reasonable men could not reasonably find a failure to exercise the care which could be expected of one in the position of the defendants' mechanic.

I agree with what is said in the dissenting opinion of Mr. Justice BRAND as to the competency of the testimony given by the expert witnesses, and also agree with his exposition of the doctrine of the "reasonable man."

---

BRAND, J. (dissenting). The opinion of the majority fairly states the evidence upon which the conclusion of the court rests. It need not be repeated. There is, however, some additional and undisputed evidence to which attention will later be directed. I agree with the majority that there was no reversible error in the instructions. Whether there was sufficient to take the case to the jury is the only serious question before the court. No exception is taken to the general rules which this court has established for the determination of the sufficiency of the evidence when tested by a motion for a nonsuit or directed verdict. It is only in the application of those rules that I have the misfortune to disagree with the majority. I concede that the case lies close to the border line and suspect that it is so considered by other members of the court.

Before discussing the sufficiency of the evidence, it may be appropriate to comment upon the nature of the question and the considerations which must serve to guide us in arriving at a conclusion. We have held that if different reasonable inferences may be drawn by reasonable men even from undisputed evidence, the question is one of fact for the jury *(Larkins v. Utah Copper Co.,* 169 Or. 499, 127 P. (2d) 354) but that

> "Evidence free from dispute, and from which no conflicting inferences can be drawn, presents no issue for the jury * * * . If the only thing that will avail a party is a guess or an inference which is not predicated upon any fact, he cannot succeed." *Inwall v. Transpacific Lumber Co.,* 165 Or. 560, at p. 573, 108 P. (2d) 522.

What is the test by which we shall determine the extent of the inferences which may be made by the "reasonable man"? It has often been urged, although not in this case, that the jurors, who are presumed to be reasonable men, having found for the plaintiff, it necessarily follows that reasonable men could draw the inference which was drawn. The same argument has been applied when a difference of opinion is found to exist among the judges of an appellate court. Assume, for example, that the situation which appears in this case were reversed, and the majority were of the opinion that there was no substantial evidence to support the verdict, while a minority believed that a jury question was involved. Could it be argued that the majority has a duty to yield to the minority because of the fact that a difference of opinion among the judges establishes that reasonable minds may differ and that therefore the cause was properly submitted to the jury? The concept of the "reasonable man" is an abstraction created by the law, and the legal suffi-

ciency of the evidence is a question of law for the court. 64 C. J. 301. Where the inferences deducible from the testimony are so opposed to all reasonable probability as to be manifestly false, the court will rule as a matter of law that the evidence is insufficient to go to the jury. 64 C. J. 303. Under democratic institutions, the determination of such questions must be made by the majority, notwithstanding the disagreement of a minority. I accept this doctrine and yield gladly to the opinion of the majority but cannot agree with the argumentum ad hominem by which it would be urged that the mere fact of the finding of the jury or a division of the court establishes that a jury question was involved in the case.

The evidence which is relied upon as supporting the verdict consists of two kinds: First, that which establishes the happening of the accident, and, second, opinion evidence to the effect that the conduct of the defendants was negligent. Obviously, the happening of the accident alone is not sufficient to support the verdict. The verdict, if supportable, must rest upon the opinion evidence. There is no evidence that the defendants "placed the plaintiff in a position of great danger." There is evidence that the defendants' mechanic pointed to the front portion of the motor or to the water pump back of the fan and said, "Just look down there." The plaintiff voluntarily took the position in which he was injured. The rule concerning defendants' duty to business visitors is set forth in 2 Restatement of the Law of Torts, § 343, the pertinent provisions of which may be summarized as follows: He would be liable if, but only if, he knows or by the exercise of reasonable care could discover the condition which, if known to him, he should realize as involv-

ing an unreasonable risk to the plaintiff, and he invites or permits plaintiff to enter or remain in the place without exercising reasonable care to make the condition reasonably safe or to warn the plaintiff. I think there is an absence of any substantial evidence satisfying the foregoing rule. Assuming that the mechanic knew the exact location in which plaintiff had placed himself, the facts are that while the plaintiff was leaning over the motor in order to observe the cause of the trouble, the defendants accelerated the engine, the fan broke and the plaintiff was injured. No warning having been given, the single question is whether there was substantial evidence from which the jury could find that the defendants knew or by the exercise of reasonable care should have discovered the condition which, if known to them, they should have realized as involving an unreasonable risk to the plaintiff. There is some evidence to the effect that metal subjected to strain tends to crystallize, but there is no evidence that any crystallization had taken place in the fan or its mechanism.

I find no testimony that it is standard practice for mechanics to exclude owners of cars or to warn them to keep away when the motor is accelerated. On the contrary, the evidence discloses, and it is common knowledge, that the owner frequently desires and is permitted to look on and see for himself the source of the trouble. It is common knowledge, which we must judicially know, that daily and throughout the country such an operation is performed an immense although incalculable number of times. Examination of the testimony of plaintiff's two experts, Smith and Lietz, as quoted by the majority, discloses that the questions which were propounded to them contained no descrip-

tion of the age or condition of the particular car or of any car but inquired generally if it would be in the exercise of reasonable care to race the engine when the customer was "in proximity to" or "in front of" the fan with the hood up. As to that broad question both witnesses made statements applicable alike to new cars and old that such an act would not constitute due care. In view of our common knowledge such broad testimony strains credulity to the breaking point. Witness Smith was asked to assume that the motor was "highly accelerated." I find no evidence that the motor was highly accelerated. It appears that the fan was accelerated to a point about equivalent to a thirty mile an hour road speed. I think a fair summary of the evidence for the plaintiff would be to say that the witnesses recognized that fans can break and have sometimes broken, that all moving machinery is dangerous in that it can break and may injure, and therefore that the fan was dangerous when the motor was accelerated. There was no attempt to show the probability of breakage by a comparison of the number of times the operation has been performed without breakage. I concede that it would be impossible to secure such data, but the fact remains that proof of negligence depends not upon showing that there was risk but rather that there was an unreasonable risk. While the witnesses said that the process was dangerous, they did not say that the injury was probable and clearly indicated that it was not. We must judicially know that the occasions upon which a fan has broken in or out of the shop and with hood up or down must represent a minute fraction of one percent of the times that the engine has been accelerated or "raced." Even if we should assume that the witnesses limited their testimony to the acceleration of an engine in an old car (which is not

the fact) their testimony would extend merely to the proposition that it is dangerous to accelerate the motor of any old car when the hood is up and when any person is in a position where he could be struck by any portion of the fan if it should break. There is a conspicuous absence of evidence of personal knowledge by the witnesses of specific facts upon which to base their broad statements of opinion. The personal experience of witness Smith was apparently limited to the breakage of one fan when the hood was down. He had apparently heard of some other instances. Witness Lietz, with twenty-five years of experience as an automobile mechanic, in answer to the question whether fans ever fly apart, said he had "heard of them doing that", that it was "infrequent" and that we "don't expect it." So far as the evidence discloses, with the sole exception above noted, none of the automobile mechanics who testified in all their years of experience had ever witnessed the breaking of a fan.

In considering whether the record discloses substantial evidence of negligence, I think we may properly consider the nature of opinion evidence, especially when it is of the kind which has been described as "invading the province of the jury." A jury is ordinarily bound by the undisputed direct evidence on an issue of fact, but we have recognized a distinction as to opinion evidence by holding that even if opinion evidence as to value stands alone, still the jury is not always bound by it. *Paine v. Meier & Frank Co.*, 146 Or. 40, 27 P. (2d) 315, 29 P. (2d) 531; *Littlepage v. Security Savings & Trust Co.*, 137 Or. 559, 3 P. (2d) 752. True, such evidence is admissible as advisory, but it is not necessarily substantial. The modern view is decidedly in favor of relaxing the old and strict exclusionary rules

concerning opinion evidence, but if such relaxation is countenanced an additional burden is placed upon courts to consider the substantiality of evidence of this type. Plaintiff's witnesses expressed direct opinions on the very issue submitted to the jury, namely, the negligence vel non of the defendant. Such evidence has been held inadmissible by this court as an invasion of the province of the jury. *Lehman v. Knott,* 100 Or. 59, 196 Pac. 476. However, I place no reliance on that rule. The evidence was received without objection, and the rule itself has received merited criticism. See Wigmore on Evidence (3rd Ed.) and cases cited in the note to section 1951, pages 68 et seq. The admission of such evidence should not be deemed reversible error, but, being received, it should be the subject of judicial examination.

The foregoing considerations cast grave doubt on the sufficiency of the evidence, but the most serious aspects of plaintiff's case remain to be considered. The plaintiff brought his car to defendants' garage for repairs because it was knocking, popping and smoking. The undisputed evidence disclosed that the pistons were loose, with the result that there was a "blow by", and upon acceleration of the motor smoke poured from the breather pipe. There was no suggestion by the plaintiff or by anyone else that there was any defect in the fan or its mechanism. The defendants' mechanic discovered the cause of plaintiff's trouble and pointed it out to the plaintiff. If plaintiff had brought the car for repairs to the very mechanical part which broke and caused the injury (namely, the fan) a different situation would have arisen, but in fact the disrepair of which plaintiff complained and which resulted in the knocking and smoking was not shown to have

involved any danger to anyone. The defendants were not asked, nor did they ever assume, to inspect or repair the fan. The undisputed evidence from a number of witnesses conclusively discloses that there was an old break in the fan which was "approximately three-quarters of the way, somewhere in there, all old break." It seems to me undeniable that this was the circumstance which produced the injury when the motor was accelerated. There is not a word of evidence to indicate the existence of any other defect or that the defendants' mechanic knew or should have known of the old break in the fan, unless we say that he was chargeable with knowledge of that particular condition merely because he had knowledge concerning the general age and appearance of the car. I think he could not be so charged.

A final circumstance seems to me to establish conclusively that a nonsuit should have been granted. The undisputed evidence shows that while the car was in the shop and not in gear, the defendants' mechanic twice caused the motor to be accelerated immediately preceding the third acceleration when the fan broke. Upon the first two occasions there was no harmful result. It apparently functioned normally. Those facts are certainly sufficient to raise an inference that the operation might be performed without danger three times as well as two. None of the plaintiff's experts were informed of this fact, and none testified that the acceleration of the motor would be dangerous on a third occasion when it had been demonstrated harmless on two immediately preceding occasions. If the witnesses were to be permitted to express their broad opinion as to the dangerous character of the operation, I think they should have been informed concerning the

preceding experiments performed by the defendants as material circumstances bearing upon the likelihood of injury in the event of a repetition of the same procedure. What opinion might have been expressed if the foregoing facts had been submitted to the witnesses, we cannot know.

We have properly held that it is the privilege of counsel to assume any state of facts which there is any testimony tending to prove and to have the opinion of the expert based on the facts assumed (*Lehman v. Knott,* supra), but there is a necessary corollary to this rule. When a hypothetical question is based upon facts in the record, as in this case, but does not include all the material facts in the record, as in this case, the answer of the witness, in and of itself, at most should not be deemed to be substantial evidence relevant to any state of facts other than those set forth in the question. If the hypothetical question sets forth only a partial statement of the material facts, the answer to the partial question, if supplemented by other testimony on the remaining material facts, may be of substantial value, but where the witness is asked a partial question and is then asked to give a general answer upon the very issue which is to be submitted to the jury, namely, the negligence of the defendant, the witness' answer should be deemed relevant only to the partial state of facts presented in the question. The answer does not necessarily constitute substantial evidence that the defendant was negligent if the undisputed evidence discloses material facts which were not included in the question. It follows that even if the answers of the experts in the case at bar were entitled to weight, so far as the questions put to them were concerned, they were entitled to no weight upon the ulti-

mate question of negligence of the defendants, because the questions put did not include material and relevant facts established by uncontradicted evidence which at least tended to indicate that the defendants were not negligent.

The opinion evidence was insufficiently tied to the facts of the specific case and amounts to nothing more than expressions based upon insufficient experience and insufficient data.

> "Necessarily the weight of the opinion of an expert depends largely upon the facts on which it is based. If supported by the evidence and by reason and common sense it may carry great weight. If it is not justified by evidence or by reason it is entitled to no weight." *United States v. Hill,* 62 F. (2d) 1022.

Under all the circumstances, and with due respect to the views of the majority, I think that the opinions of the experts did not rise to the dignity of substantial evidence of negligence and that a nonsuit should have been granted.